948 A.2d 790

**PENNSYLVANIA BANKERS ASSOCIATION and the Pennsylvania Business Bank, Appellants**

v.

**PENNSYLVANIA DEPARTMENT OF BANKING and Trumark Financial Credit Union, Appellees.**

**Pennsylvania Bankers Association, Pennsylvania Business Bank, Fulton Bank, and Premier Bank, Appellants**

v.

**Pennsylvania Department of Banking, Pennsylvania Department of Revenue, the Attorney General of the Commonwealth and Freedom Credit Union, Appellees.**

Supreme Court of Pennsylvania.

Argued May 14, 2007.

Re–Submitted Jan. 11, 2008.

Decided June 16, 2008.

2

Christopher R. Nestor, Esq., Raymond P. Pepe, Esq., Kirkpatrick & Lockhart Preston Gates Ellis, L.L.P., Harrisburg, for Pennsylvania Bankers Association, et al.

Francis Crowley, Esq., Philadelphia, for Freedom Credit Union.

Victoria Ann Reider, Esq., Linda Carroll, Esq., for Pennsylvania Department of Banking.

Daniel T. Fitch, Esq., Philadelphia, Trumark Financial Credit Union.

Richard T. Wargo, Jr., Esq., PA Credit Union Association, for Pennsylvania Credit Union Association.

Howard G. Hopkirk, Esq., Harrisburg, for Attorney General's Office and Dept. of Revenue.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD and McCAFFERY, JJ.

## OPINION

Justice BAER.[1]

This direct appeal arises from a procedurally complex dispute between various members of the banking industry, the credit union industry, and several administrative agencies, concerning the tax treatment of credit unions under the Pennsylvania Credit Union Code ("Credit Union Code"), 17 Pa.C.S. §§ 101–1504. At issue is whether the Commonwealth Court properly dismissed the declaratory judgment claims raised by the Pennsylvania Bankers Association, the Pennsylvania Business Bank, Fulton Bank, and Premier Bank ("Appellants" or "the Banks"), which alleged that § 517 of the Credit Union Code, 17 Pa.C.S. § 517, violates Article VIII, §§ 2 and 5 of the Pennsylvania Constitution.[2,3] As detailed

---

1. Reassigned to this author.

2. 17 Pa.C.S. § 517 provides: "A credit union incorporated under or subject to this title shall be deemed an institution for savings, and its assets, together with all the accumulation therein, shall not be subject to taxation except as to real estate owned by it. . . ."

3. Article VIII, §§ 2 and 5 of the Pennsylvania Constitution limit the legislature's authority to grant tax exemptions.

Section 2, entitled "Exemptions and Special Provisions," provides:
(a) The General Assembly may by law exempt from taxation:
(i) Actual places of regularly stated religious worship;
(ii) Actual places of burial, when used or held by a person or organization deriving no private or corporate profit therefrom and no substantial part of whose activity consists of selling personal property in connection therewith;

later in our opinion, the Banks also raised several alternative constitutional challenges to § 517, which remain pending before the Commonwealth Court. For the reasons that follow, we hold that the Commonwealth Court's order dismissing the Banks' challenge under Article VIII, §§ 2 and 5, is not an appealable final order, and therefore, we quash this appeal as interlocutory.

Before taking up the specific circumstances of the case *sub judice*, a brief discussion of the tax treatment of credit unions is in order. Traditionally, credit unions have functioned as cooperative associations that were intended to provide persons of modest means with an opportunity to control their money and improve their economic and social condition.[4] In light of these charitable purposes, credit unions enjoy numerous tax exemptions as non-profit corporations that are not enjoyed by banks. For instance, as non-profit corporations, credit unions are exempt from federal taxation, *see* 26 U.S.C. § 501(c)(14)(A), and from state taxation, on their profits. *See* 17 Pa.C.S. § 517. However, as discussed later in this opinion,

> (iii) That portion of public property which is actually and regularly used for public purposes;
> (iv) That portion of the property owned and occupied by any branch, post or camp of honorably discharged servicemen or servicewomen which is actually and regularly used for benevolent, charitable or patriotic purposes; and
> (v) Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.
>
> \* \* \*
>
> Pa. Const. art. VIII, § 2(a).
> Section 5, titled "Exemption from taxation restricted," states: "All laws exempting property from taxation, other than the property above enumerated shall be void."
> Pa. Const. art. VIII, § 5.

4. *See* 17 Pa.C.S. § 301(a) ("A credit union may be incorporated under this title for the purpose of promoting thrift among its members, creating a source of credit for such members at reasonable rates of interest and providing an opportunity for its members to use and control their own money on a democratic basis in order to improve their economic and social condition."). *See generally NCUA v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998) (providing a history of the non-profit purposes of credit unions).

credit unions are subject to state taxation on the real estate they own. *Id.*

Pennsylvania's legislation on credit unions originated with the Credit Unions Act of 1933, which has been replaced by the current Credit Union Code.[5] Since the inception of legislation in this arena, membership in credit unions has been based on common bonds of association, which are defined in each credit unions' charter.[6] These common bonds are often defined in terms of shared occupations, or by membership in a religious congregation or labor organization. *See* 17 Pa.C.S. § 701 (specifying common bonds on which membership in a credit union may be based). The events precipitating the instant litigation arise from a statutory amendment to the Credit Union Code that would allow credit unions to expand their membership by basing it not only on common bonds of association, but also on common bonds of geography. *See* 17 Pa.C.S. § 501(e) (extending to credit unions the power to engage in activities authorized by Section 109 of the Federal Credit Union Act, 12 U.S.C. § 1759(b), including the option of basing membership on geographical districts). The Banks now claim that the expanded membership afforded under the amendment would give credit unions an unfair competitive advantage over banks in light of the tax exemptions which credit unions, but not banks, enjoy under § 517 of the Credit Union Code.

The present dispute arose in 2003, when three state-chartered credit unions, including Appellees Trumark Financial Credit Union ("Trumark") and Freedom Credit Union ("Freedom"), filed formal notices with the Pennsylvania Department of Banking ("the Department") of their intention to convert their charters to allow membership based on common bonds of geography. The Banks opposed these notices by filing pro-

---

**5.** *See* the Credit Unions Act of 1933, *formerly* 14 P.S. §§ 201–226. The current Credit Union Code, 17 Pa.C.S. §§ 101–1504, was enacted in 1990.

**6.** *See* Section 2 of the Credit Unions Act of 1933, *formerly* 14 P.S. §§ 201–226. A similar provision is included in the current Credit Union Code at 17 Pa.C.S. § 303, which states that a credit union's charter must specify the common bond of membership.

tests with the Department. The Department then held a consolidated hearing on the credit unions' notices and permitted the Banks to intervene and participate in the proceedings. After hearing the parties' arguments, the Secretary of Banking entered orders permitting Trumark and Freedom to convert their charters to allow membership based on common bonds of geography, after which the Secretary dismissed the Banks as intervenors.

In January 2005, the Banks filed a petition for review with the Commonwealth Court raising claims purporting to invoke the court's appellate and original jurisdiction. The portion of the Banks' petition invoking the Commonwealth Court's appellate jurisdiction challenged the Secretary of Banking's orders allowing Trumark's and Freedom's conversion to geography-based credit unions, as well as the Secretary's decision to dismiss the Banks as intervenors. This appellate jurisdiction portion of the Banks' petition was affirmed by the Commonwealth Court in a published *en banc* opinion, and is currently pending review by this Court under separate docket numbers. *See Pa. Bankers Ass'n v. Dep't. of Banking*, 893 A.2d 864 (Pa.Cmwlth.2006), *appeal granted,* 591 Pa. 729, 920 A.2d 835 (2007).[7]

The instant appeal concerns the portion of the Banks' petition invoking the Commonwealth Court's original jurisdiction, wherein the Banks raised several alternative declaratory judgment claims alleging that the exemption from taxation provided to credit unions under § 517 of the Credit Union Code, 17 Pa.C.S. § 517, violates Article VIII, §§ 1, 2, 5, and 6 of the Pennsylvania Constitution, as well as the Equal Protection Clause of the United States Constitution. In addition, the Banks sought a declaration that § 501(e) of the Credit Union Code, 17 Pa.C.S. § 501(e), also violated the above constitutional provisions. In response, the Pennsylvania Department of Banking, the Pennsylvania Department of Revenue, the Penn-

7. Although the Banks filed a single petition invoking the Commonwealth Court's appellate and original jurisdiction, the case was bifurcated into two separate actions. *See Pa. Bankers Ass'n,* 893 A.2d at 868 ("Preliminary objections to the original jurisdiction component are pending, and they will be addressed in a separate opinion.").

sylvania Office of Attorney General, the Pennsylvania Credit Union Association, Trumark, and Freedom, (collectively, "Appellees"), filed preliminary objections in the nature of demurrers to all of the Banks' constitutional claims.[8]

The Commonwealth Court overruled the Appellees' preliminary objections with respect to the Banks' challenges under Article VIII, § 1, and under the Equal Protection Clause. In an unpublished companion opinion, the court reasoned that factual findings would be necessary to determine whether the tax classifications provided under the Credit Union Code violate these provisions, and therefore, it was premature to dismiss these claims on preliminary objections. However, as detailed in the following paragraph, the Commonwealth Court sustained Appellees' preliminary objections with respect to the Banks' challenges under Article VIII, §§ 2, 5, and 6, resulting in the dismissal of these claims from the case.[9]

In dismissing the Banks' claims under Article VIII, §§ 2 and 5, the court took guidance from two ancient decisions of this Court where we analyzed the predecessors to §§ 2 and 5 under the Pennsylvania Constitution of 1874. In this regard, the Commonwealth Court noted that in *Turco Paint and Varnish Co. v. Kalodner*, 320 Pa. 421, 184 A. 37, 39–40 (1936), we rejected a constitutional challenge to a tax statute that directed different methods for calculating income taxes for corporations conducting business entirely in the Commonwealth and those conducting only a portion of their business in the Commonwealth. In finding the statute constitutional, we interpreted the predecessors to §§ 2 and 5 as being violated only when a statute exempted all taxation. *Id.* at 43. Similarly, the Commonwealth Court noted our decision in *Commonwealth v. Germania Brewing Co.*, 145 Pa. 83, 22 A. 240 (1891),

8. Appellees also filed preliminary objections alleging that the Banks lacked standing to bring the original jurisdiction component of its petition for review, and that the Banks failed as a matter of law to state a justiciable controversy. Cmwlth. Ct. Op. at 3. The Commonwealth Court overruled these preliminary objections. *Id.* at 3–9, 17.

9. Although the Commonwealth Court dismissed the Banks' challenge to § 517 under Article VIII, §§ 2, 5, and 6, this appeal only concerns Article VIII, §§ 2 and 5.

where we affirmed a lower court decision holding that a tax provision offended the predecessors to §§ 2 and 5 only where the exemption relieved an entity from paying all taxation.

With *Turco Paint* and *Germania Brewing* in mind, the Commonwealth Court turned to § 517 of the Credit Union Code and acknowledged that credit unions are exempt from federal and state taxation on their income. *See* 17 Pa.C.S. § 517. However, the court also observed that, under § 517, credit unions are still required to pay taxes on the real estate they own. *Id.* Consequently, because § 517 does not exempt credit unions from all taxation, the Commonwealth Court dismissed the Banks' claims regarding Article VIII, §§ 2 and 5 because, in the court's view, § 517 did not violate these provisions as a matter of law.[10]

On March 28, 2006, the Banks filed the instant appeal to this Court, arguing that the Commonwealth Court erred in dismissing their claims based on Article VIII, §§ 2 and 5. According to the Banks, the Commonwealth Court's decision was based on inapplicable case law, and failed to take into account fundamental differences between the Pennsylvania Constitution of 1874 and the current Pennsylvania Constitution. In response, the Appellees maintain that this appeal is interlocutory. Accordingly, before we reach the merits of the Banks' claim, we must first address whether the Commonwealth Court's order, which dismissed some, but not all, of the Banks' constitutional claims, is an appealable final order.

In their briefs, the Banks acknowledge that Pa.R.A.P. 341(b)(1) defines a final order as one that disposes of all claims and all parties.[11] Applying this definition, the Banks concede

10. Judge Colins and Judge Leadbetter each filed a dissenting opinion explaining that they would have sustained all of the Appellees' preliminary objections. As we conclude this appeal is impermissibly premature, we express no view on the merits of the controversy.

11. Pa.R.A.P. 341, titled "Final Orders; Generally," provides in pertinent part:

(a) General rule. Except as prescribed in subdivisions (d), and (e) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.

(b) Definition of final order. A final order is any order that:

that the Commonwealth Court's order did not dispose of all their claims or any party. Nevertheless, the Banks maintain that this is not fatal to their appeal because an order can also be deemed final by statute. *See* Pa.R.A.P. 341(b)(2). In this case, the Banks maintain that the Declaratory Judgment Act, 42 Pa.C.S. § 7532, expressly defines a final order as one which affirmatively or negatively declares the parties' rights, status, or legal relationship.[12] According to the Banks, the Commonwealth Court's order fits within this statutory language because it essentially declared that there was no legal basis on which the Banks could proceed based on Article VIII, §§ 2 and 5 of the Pennsylvania Constitution. As such, the Banks urge this Court to hold that the Commonwealth Court's order is an appealable final order.

The Banks also rely on this Court's decision in *Nationwide Mutual Insurance Co. v. Wickett*, 563 Pa. 595, 763 A.2d 813 (2000), where we addressed whether a trial court's order sustaining various defendants' preliminary objections in the nature of demurrers was a final order under Pa.R.A.P. 341(b)(2) and 42 Pa.C.S. § 7532. In *Wickett*, 763 A.2d at 815–16, we explained that the plaintiffs filed a declaratory judgment action against multiple defendants seeking a declaration that the Workers' Compensation Act did not prohibit the plaintiffs from recovering underinsured motorist benefits under an insurance contract. *Id.* Three of the defendants filed preliminary objections in the nature of demurrers, alleging that the Workers' Compensation Act was the plaintiffs' exclu-

(1) disposes of all claims and of all parties; or
(2) is expressly defined as a final order by statute; or
(3) is entered as a final order pursuant to subdivision (c) of this rule.

\* \* \*

12. 42 Pa.C.S. § 7532, entitled "General scope of declaratory remedy," provides:

Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

sive remedy, and that the plaintiffs therefore, as a matter of law, could not recover under the contract of insurance.

Shortly thereafter, the trial court entered orders sustaining the preliminary objections, thereby ending the plaintiffs' declaratory judgment action against these three defendants, and dismissing them from the litigation. *Wickett*, 763 A.2d at 816. In analyzing whether the order sustaining these preliminary objections constituted a final, appealable order, this Court opined that, because a demurrer is essentially an allegation that a pleading is legally insufficient, the trial court's order constituted a declaration that the plaintiffs had no legal basis to recover underinsured motorist benefits under the insurance contract against these three defendants. *Id.* at 817–18. Accordingly, this Court concluded that, under the plain language of 42 Pa.C.S. § 7532, the trial court's orders were final and appealable. *Wickett*, 763 A.2d at 817–18.

The Banks maintain that the Commonwealth Court's order, like the orders in *Wickett*, is final and appealable pursuant to 42 Pa.C.S. § 7532, because it finally declared that the Banks did not have a valid claim under Article VIII, §§ 2 and 5 of the Pennsylvania Constitution. Although the Banks acknowledge that, unlike the instant matter, the order in *Wickett* disposed of all claims against several defendants, the Banks rely on a case where we stated in a footnote that an order need not put a party out of court to be considered final. *See Swords v. Harleysville Insurance Companies*, 584 Pa. 382, 883 A.2d 562, 565 n. 4 (2005) (indicating that, so long as an order in a declaratory judgment action declares the rights of the parties, it is a final order under *Wickett* irrespective of whether a party is dismissed). The Banks also rely on *American Rehabilitation and Physical Therapy, Inc. v. American Motorists Insurance Co.*, 578 Pa. 154, 849 A.2d 1202 (2004) (*per curiam*), where we addressed a Superior Court decision which held that a trial court's order granting summary judgment with respect to one of two claims was not a final order because it did not dispose of all claims as to any party. We ultimately reversed the Superior Court in a *per curiam* order, citing to *Wickett*.

In contrast, Appellees take the position that the Commonwealth Court's order is not a final appealable order, notwithstanding our interpretation of 42 Pa.C.S. § 7532 in *Wickett*.[13] According to Appellees, this case is distinguishable from *Wickett* because the order in that case ended the plaintiffs' declaratory judgment action against three of the defendants, resulting in their dismissal. In contrast, Appellees note that the Commonwealth Court's order in this case did not end the litigation against any party, but merely narrowed the scope of the Banks' broader request for declaratory judgment, which included several alternative arguments pertaining to the constitutionality of § 517 of the Credit Union Code. In Appellees' view, because the Banks may still be able to obtain the relief they originally sought—*i.e.*, a declaration that § 517 is unconstitutional-by litigating their alternative claims before the Commonwealth Court, the Commonwealth Court's order should not be construed as one declaring the parties' rights or legal relations, as required by 42 Pa.C.S. § 7532.

Appellees also rely on *Jenkins v. Hospital of the Medical College of Pennsylvania*, 535 Pa. 252, 634 A.2d 1099 (1993), where we addressed an order that dismissed a portion of a multi-count complaint. In *Jenkins*, the plaintiff gave birth to a child with Downs syndrome and, immediately thereafter, underwent a sterilization procedure at the defendant hospital. Following these events, the plaintiff filed a multi-count complaint against the hospital and her physicians, alleging that 1) the defendants had been negligent in failing to perform proper diagnostic tests on plaintiff during the pregnancy that would have alerted her to the presence of Down's syndrome in the newborn; and 2) that the defendants had failed to obtain her informed consent prior to performing the sterilization procedure.

In response, the defendants moved for judgment on the pleadings with respect to some of the plaintiff's arguments

**13.** The Pennsylvania Department of Revenue and the Pennsylvania Attorney General filed a joint brief, as did Freedom, Trumark, and the Credit Union Association. The Department of Banking filed a separate brief. Because their briefs are, in substance, identical, their arguments have been consolidated for ease of discussion.

concerning the defendants' failure to perform diagnostic testing, which the trial court granted. The plaintiff in *Jenkins* filed an appeal to the Superior Court. *Jenkins v. Hospital of the Medical College of Pennsylvania,* 401 Pa.Super. 604, 585 A.2d 1091 (1991). In its opinion, one of the threshold issues the Superior Court addressed was whether the trial court's order was appealable given that some of the plaintiff's claims remained pending in the court below. *Id.* at 1094. The Superior Court held that it was, reasoning that where a final judgment is entered on a separate and distinct cause of action, the judgment is appealable. *Id.* at 1097. Shortly thereafter, we granted allocatur and considered, *inter alia,* whether the Superior Court was correct in finding the trial court's order appealable. In our opinion, we stated that "[a]n order dismissing one or more counts of a multi-count complaint which sets forth alternate theories of recovery is interlocutory" and hence not appealable. *Jenkins,* 585 A.2d at 1103. We observed that this rule recognizes that the plaintiff may still proceed to a determination of the merits based on an alternate theory. *Id.* However, we also stated that this rule is "less compelling" when an order dismisses a separate and distinct cause of action because in those instances, the remaining cause of action pending before the court below would not be affected by appellate review of the other claim. Applying this standard, we concluded that the plaintiff raised two distinct causes of action in her complaint, and therefore, the trial court's order dismissing only one of her claims was appealable. *Id.*

Although our decision in *Jenkins* ultimately determined that the trial court's order in that case was appealable, Appellees nevertheless rely on *Jenkins* for the general proposition that, where, as here, a plaintiff files a multi-count complaint setting forth alternative theories of recovery, an order dismissing less than all of the claims is generally considered interlocutory because the plaintiff may still pursue the merits of his or her cause of action based on another theory. In this regard, Appellees note, for example, that if this Court were to adjudicate the Banks' appeal regarding Article VIII, §§ 2 and 5, our decision might very well be a fruitless exercise because the Banks could still prevail on one of their remaining issues

before the Commonwealth Court, and thereby obtain the same relief they seek here. Appellees rightly maintain that such a result runs contrary to Pennsylvania's policy against piecemeal appeals. *See Kowenhoven v. County of Allegheny*, 587 Pa. 545, 901 A.2d 1003 (2006) (noting jurisprudential concern over piecemeal litigation).

In light of the foregoing arguments, and after careful review of the applicable law, we agree with Appellees that the Commonwealth Court's order is not final and appealable. In reaching this conclusion, we acknowledge the Banks' argument that an order need not dispose of all claims against all parties if a statute expressly defines the order as final. We also do not take issue with the Banks' assertion that the Declaratory Judgment Act defines a final order as one that declares the rights of the parties or their legal relationship. *See* 42 Pa.C.S. § 7532. The Banks, however, fail to realize that, because they might still be able to obtain the relief they are seeking—*i.e.* a declaration that § 517 of the Credit Union Code is unconstitutional—based on one of their alternative theories pending before the Commonwealth Court, the order dismissing their challenge under §§ 2 and 5 had no practical effect upon the ultimate decision in this case. Indeed, at this juncture, we still have no idea if the Commonwealth Court will ultimately enter judgment for or against the Banks.[14] As a result, the Commonwealth Court's order did not have the effect of declar-

---

**14.** One should note that, pursuant to our Rules of Appellate Procedure, the Commonwealth Court is divested of jurisdiction to adjudicate the Banks' alternative constitutional claims pending the current appeal. *See* Pa.R.A.P. 1701(a) ("Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court ... may no longer proceed further in the matter."). Pa. R.A.P. 1701(c), which qualifies Pa.R.A.P. 1701(a) and permits an appeal where only a "particular item, claim or assessment" is involved, has been held to apply where a divestiture of trial court jurisdiction during an appeal of collateral issues would needlessly delay resolution of the basic issues in the proceeding below. *See Rosen v. Rosen*, 520 Pa. 19, 549 A.2d 561, 564 (1988) ("The purpose of Rule 1701(c) is to prevent appeals of collateral issues from delaying the resolution of the basic issues where the proceeding below can continue without prejudicing the rights of the party seeking the interim review."). Pa.R.A.P. 1701(c) would not apply here, where the issues on appeal are alternative theories of relief, rather than matters collateral to the basic dispute.

ing the parties' rights within the meaning of § 7532, but merely narrowed the scope of the Banks' broader declaratory judgment action, which raised several alternative theories of relief.

Our decision in this matter is rooted in this Court's well-documented efforts of avoiding piecemeal litigation. *See Kowenhoven*, 901 A.2d at 1011–13. *See also Stevenson v. General Motors Corp.*, 513 Pa. 411, 521 A.2d 413 (1987) (stating that discouraging interlocutory appeals avoids piecemeal determinations and the consequent protraction of litigation); *Fried v. Fried*, 509 Pa. 89, 501 A.2d 211, 215 (1985) (stating that the law "abhors piecemeal determinations and the consequent protraction of litigation."). As we noted in *Commonwealth v. Failor*, 564 Pa. 642, 770 A.2d 310, 314 (2001), avoiding piecemeal litigation conserves scarce judicial manpower as well as the time of witnesses, jurors, and the use of public resources. Moreover, this Court has noted that a policy that allows for piecemeal appeals "serves only to increase the cost of litigation, and favors the party with the greater resources, who can strategically delay the action at the expense of the indigent party." *Fried*, 501 A.2d at 215. Finally, we note that piecemeal litigation, in addition to being inefficient and costly, can often lead to inconsistent results. *Kowenhoven*, 901 A.2d at 1011.

If this Court were to find this appeal proper, it would raise many of the same concerns regarding piecemeal litigation outlined in our discussion above. We note the following scenario. Initially, this Court adjudicates the Banks' claims regarding §§ 2 and 5 and concludes that these theories would not provide the Banks with relief. The case then goes back to the Commonwealth Court on the Banks' remaining claims, where the Appellees move for judgment on the pleadings regarding the Banks' equal protection claim. In response, the

Thus, while this Court has considered this matter under Article VIII, §§ 2 and 5, the Commonwealth Court has not had jurisdiction to adjudicate the Banks' claims under § 1, or its equal protection claim. As discussed later in this opinion, *seriatim* reviews of various theories of relief by the Commonwealth Court and this Court will protract the litigation and add substantial expense to resolving this dispute.

court grants the Appellees' motion and dismisses this claim. The Banks appeal that decision to this Court, which would divest the Commonwealth Court of jurisdiction to adjudicate the Banks' other claim under § 1 pending our adjudication of the equal protection claim. *See supra* note 14. On appeal, this Court affirms the dismissal of the Banks' equal protection claim. Finally, the case goes back again to the Commonwealth Court, which affords the Banks relief on their final claim under Article VIII, § 1, thereby rendering moot this Court's two prior adjudications. Such a result would protract litigation for many years, needlessly waste judicial resources, create backlog, and force litigants to sustain undue expenses.

The Banks nevertheless argue that the Commonwealth Court's order constitutes a final, appealable order pursuant to *Wickett.* We find *Wickett* distinguishable, however, for the following reasons. In *Wickett,* the trial court's order put certain defendants out of court by dismissing all of the plaintiff's claims against them. In so doing, the order prevented the plaintiffs from obtaining any relief against these parties. It would therefore be appropriate in this context to characterize the trial court's order as a final order under 42 Pa.C.S. § 7532 because it, in essence, declared that the plaintiffs did not have any viable theory of recovery against such defendants.

In contrast, as we emphasized earlier in this opinion, the Commonwealth Court's order in this case did not dismiss any party, but merely narrowed the scope of the Banks' declaratory judgment action, which raised alternative theories of relief. Because the Banks might still obtain the relief they are seeking based on one of their remaining constitutional theories, the Commonwealth Court's order sustaining the Appellees' preliminary objections has no certain effect upon the ultimate relief to which the Banks may be entitled. Thus, we find that the Commonwealth Court's order in this case did not declare the parties' rights within the meaning of 42 Pa.C.S. § 7532, and therefore, it is not a final order under *Wickett.*[1516]

15. We note that in *Wickett,* Justice Saylor authored a dissenting opinion suggesting that this Court adopt an interpretation of 42 Pa.C.S. § 7532

We likewise reject the Banks' reliance on *Swords* and *American Rehabilitation* for the proposition that *Wickett* does not require a party to be put out of court before an order is considered final. In *Swords*, 883 A.2d at 565 n. 4, this Court summarily cited to *Wickett* in a footnote to explain why this Court had jurisdiction over an appeal from an order granting partial summary judgment. However, unlike the instant case, the Court in *Swords* was not directly addressing the issue of whether the rule in *Wickett* would apply where, as here, no party has been dismissed from the action and several alternative issues remain unresolved. As such, our brief discussion of *Wickett* in *Swords* is likely *obiter dicta* and, nevertheless, provides little guidance on the applicability of *Wickett* under the facts of this case.

The Banks' reliance on *American Rehabilitation* is also unavailing. As we noted earlier in this opinion, in *American Rehabilitation*, this Court entered a *per curiam* order, citing to *Wickett*, in reversing a Superior Court decision which held that an order, which granted summary judgment on one of two claims, was not a final order. While the Banks argue that

that would align declaratory judgment jurisprudence with that which applies to civil actions generally. *See Wickett*, 763 A.2d at 819 (Saylor, J., dissenting). Subsequently, in *Motorists Mutual v. Pinkerton*, 574 Pa. 333, 830 A.2d 958 (2003), Justice Saylor authored a concurring opinion in which he repeated his concerns regarding *Wickett*, and urged this Court to reassess the practical consequences of that decision. While we note Justice Saylor's prior position in these cases, we find the instant matter distinguishable from *Wickett* for the reasons outlined in the body of this opinion. Moreover, as none of the parties in this matter are advocating that we overturn our decision in *Wickett*, we decline to do so at this juncture.

16. Notably, the intermediate appellate courts have limited *Wickett* to contexts where at least one party has been dismissed from the case. *See Wimer v. Pa. Employees Benefit Trust Fund*, 868 A.2d 8, 13 (Pa.Super.2005), *aff'd* 939 A.2d 843 (Pa.2007) (finding *Wickett* applies when a complaint is dismissed and the plaintiffs are put out of court); *Consolidation Coal Co. v. White*, 875 A.2d 318, 325 (Pa.Super.Ct.2005) (holding an order is only final under *Wickett* when there is "no conceivable legal theory under which Appellants could prevail"); *Cresswell v. Nat'l Mut. Cas. Ins. Co.*, 820 A.2d 172, 176 n. 2 (Pa.Super.2003) (granting partial summary judgment was not a final order under *Wickett* because one claim remained); *Indep. Oil & Gas Ass'n of Pa. v. Pa. Pub. Util. Comm'n*, 804 A.2d 693, 701 (Pa.Cmwlth.2002) (determining that *Wickett* does not apply unless the plaintiffs are put out of court).

*American Rehabilitation* reflects an implicit recognition by this Court that orders are appealable under *Wickett,* even when no parties are dismissed, the Banks fail to recognize that it is not binding as legal precedent. *See Commonwealth v. Smith,* 575 Pa. 203, 836 A.2d 5, 17 (2003) (stating that a *per curiam* decision, while binding as the law of that case, establishes no precedent beyond the authority cited in the order); *Commonwealth v. Tilghman,* 543 Pa. 578, 673 A.2d 898, 903–05 (1996) (explaining that an order with no articulated rationale does not constitute binding authority with respect to the legal issues raised in the appeal).

For the reasons outlined above, we conclude that the Commonwealth Court's order in this case, which sustained the Appellees' preliminary objections in the nature of demurrers with respect to some, but not all, of the Banks' constitutional claims, is not a final, appealable order. Our conclusion today is not only informed by our well-established policy of avoiding piecemeal litigation, it also recognizes that such an order does not represent an affirmative or negative declaration of the parties' rights within the meaning of 42 Pa.C.S. § 7532 because alternate avenues of relief can still be pursued against the same parties in the courts below. Accordingly, we quash the instant appeal as interlocutory.

Chief Justice CASTILLE, Justice EAKIN, Justice TODD and Justice McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR, concurring.

The majority adopts a policy-based rationale in reaching its present determination concerning whether orders in a declaratory judgment action foreclosing some but not all avenues of relief should be deemed final under Rule of Appellate Procedure 341(b)(2). *See* Majority Opinion, *op.* at 14, 948 A.2d at 798 (explaining that "[o]ur decision is rooted in this Court's well-documented efforts of avoiding piecemeal litigation."). The difficulty is that the Court in *Nationwide Mutual Insurance Company v. Wickett,* 563 Pa. 595, 763 A.2d 813 (2000),

and in some of the decisions that followed, has applied a very different approach in interpreting Rule 341(b)(2) and the effect of the Declaratory Judgment Act in the appealability arena. I believe that this persisting schism is likely to continue to cause disharmony and confusion.[1]

At this juncture, I believe that it would be preferable: to concede that this Court has had great difficulty with *Wickett* in the years since its issuance; to recognize that *Wickett's* rationale is irreconcilable with a scheme of appealability implementing considered limits designed to control piecemeal litigation; and therefore, to limit *Wickett* to its facts.

1. For example, it is difficult to glean from the majority opinion whether its holding will extend to circumstances in which a pre-trial order not only rejects one or more theories of relief, but also has some broader impact on available forms of relief. It would be very difficult, in my view, to conclude that such an order does not represent a declaration of rights such as would be immediately appealable under the rationale of Wickett, 563 Pa. at 604, 763 A.2d at 818 ("[The Declaratory Judgment Act] simply states that an order in a declaratory judgment action that either affirmatively or negatively declares the rights and duties of the parties constitutes a final order."). To the degree that the majority's present approach will not encompass such orders, it appears to open a wide area of uncertainty and potential disagreement concerning the effect of discrete pre-trial orders on the scope of relief remaining available in declaratory judgment actions.