J. S91008/16

2017 PA Super 172

| | | |
|---|---|---|
| J.A.F. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| C.M.S., | : | No. 1176 MDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered June 21, 2016,
in the Court of Common Pleas of Centre County
Civil Division at No. 2015-4402

BEFORE: FORD ELLIOTT, P.J.E., RANSOM, J., AND STEVENS, P.J.E.*

OPINION BY FORD ELLIOTT, P.J.E.:                    **FILED JUNE 01, 2017**

C.M.S. ("Mother") appeals from the June 21, 2016 order entered in the

Court of Common Pleas of Centre County that denied her petition for

declaratory judgment and granted J.A.F. ("Father") standing to seek legal or

physical custody of the minor child, O.P.S.[1]  We quash.

The record reflects that Mother and M.H. began a same-sex romantic

relationship in August 2013; that M.H. transitioned to male in March 2015;

and that Mother and M.H. married on April 8, 2016.  The record further

reflects that in 2014, Mother and M.H. wanted to have a child but lacked the

financial means to engage a sperm bank.  As a result, the pair began to look

---

* Former Justice specially assigned to the Superior Court.

[1] We note that this appeal was labeled a Children's Fast Track case.  The
trial court's order, however, did not present a custody issue.

for a donor "through friends at work." (Notes of testimony, 4/25/16 at 6.) When M.H. discussed the situation with some of those friends at work in the fall of 2014, Father overheard the conversation and later contacted M.H. via Facebook to volunteer to impregnate Mother. The record reflects that in November 2014, Mother, Father, and M.H. engaged in a series of text messages in which they planned the logistics of Father impregnating Mother and discussed the future roles that the parties would play in a resulting child's life in the event that Mother and Father conceived.

The record further reflects that Mother and Father had sexual intercourse at least once in November or December 2014, and as a result, Mother became pregnant with O.P.S. Mother gave birth to O.P.S. in August 2015. No dispute exists that Father is the biological father of O.P.S. The parties, however, dispute the role that Father was to play in the child's life. This dispute began during Mother's pregnancy and continued following the child's birth. As a result of this dispute, Mother has refused all of Father's requests to see O.P.S.

On November 9, 2015, Father filed a complaint for custody against Mother.[2] In response, Mother filed preliminary objections alleging that Father lacked standing to seek custody of the child under 23 Pa.C.S.A. § 5324 because, pursuant to the parties' text-message sperm-donor contract, he was merely a sperm donor and sperm donors do not have

---

[2] M.H. is not a party to the underlying custody dispute.

standing to seek custody under Section 5324.[3]  Both parties filed briefs and agreed to have the matter decided by the trial court on the basis of those briefs.  On February 4, 2016, the trial court entered an order that granted Father provisional standing pending the development of further facts.

On March 9, 2016, Mother filed a petition for declaratory judgment requesting that the trial court "enter an order and decree declaring that a contract exists between the parties . . . and enforce said contract with respect to [Father's] interest in and standing for any custody action." (Mother's petition for declaratory judgment, 3/9/16 at 3.)  On April 25, 2016, the trial court conducted a hearing on that petition.  Thereafter, both parties submitted briefs.

On June 21, 2016, the trial court filed an opinion and entered an order.  In its opinion, the trial court set forth its reasoning for its conclusion that no sperm-donation contract existed between the parties and, consequently, deemed it unnecessary to determine the contract's enforceability.  (Trial court opinion and order, 6/21/16 at 1-4.)  The trial court further found that because Father is the biological father of O.P.S., Father has standing to seek custody of O.P.S. pursuant to 23 Pa.C.S.A. § 5324.  (*Id.* at 4.)  The trial court simultaneously entered an order that

---

[3] Section 5324 grants standing to seek custody of a child to a parent of the child, a person who stands **in loco parentis**, and, under certain circumstances, a grandparent of the child.  23 Pa.C.S.A. § 5324.

denied Mother's petition for declaratory judgment and granted Father standing to seek legal or physical custody of O.P.S. (*Id.*)

On June 23, 2016, Mother requested a continuance of the custody proceedings for the reason that "Mother will be filing a Notice of Appeal to the Superior Court of the court's ruling in its Motion for Declaratory Judgment." (Mother's continuance request and order of court, 6/24/16.[4]) On June 24, 2016, the trial court entered an order that rescheduled the custody hearing that was originally scheduled to take place on June 24, 2016 to March 13, 2017. (*Id.*)

On July 15, 2016, Mother filed a notice of appeal to this court and simultaneously filed a concise statement of errors complained of on appeal. On July 20, 2016, the trial court filed an "opinion in response to matters complained of on appeal" in which it incorporated its June 21, 2016 opinion and order. On August 15, 2016, this court ordered Mother to show cause as to why her appeal should not be quashed as having been taken from an unappealable interlocutory order. Mother filed a timely response. On August 31, 2016, this court discharged the show-cause order, and the issue of appealability is now before us. We note that both parties have addressed the appealability issue in their briefs.

---

[4] The continuance request and the order are on the same form and were docketed on June 24, 2016. (Docket #20.)

Here, Mother contends that the order denying her petition for declaratory judgment constitutes "a final order on the question of whether there was a valid, enforceable contract, in the form of a sperm donation agreement, between the parties." (Mother's brief at 2.) Mother concedes that the trial court's determination that no sperm-donation contract exists determined Father's standing to seek custody, but she nevertheless argues that she appeals from the order denying her declaratory relief and determining that no sperm-donation contract exists, and not from the order overruling her preliminary objections wherein she challenged Father's standing based on her allegation that he is a contractual sperm donor. Mother has done nothing more than repackage her preliminary objections and assign them the new label of "petition for declaratory relief" in an effort to obtain appellate review of the trial court's standing determination in the underlying custody action. Precedent and our rules of court prohibit Mother from doing so.

Here, the order Mother seeks to appeal from does not qualify as a final order because (i) it was entered in an ongoing child custody proceeding; (ii) the trial court has not completed its hearings on the merits of the underlying custody dispute;[5] and (iii) the order does not constitute a complete resolution of the custody claims pending between Mother and

---

[5] The record reflects that the trial court scheduled a custody hearing for March 13, 2017.

Father. Nevertheless, Mother attempts to obtain appellate review by claiming that the order appealed from denied her declaratory relief, and pursuant to the Declaratory Judgments Act, that declaration has the force and effect of a final judgment. (Mother's brief at 10-12.) In other words, Mother argues that because the order denied her declaratory relief, the Declaratory Judgments Act defines the order as a final order. Mother is mistaken.

Section 7532 of the Declaratory Judgments Act provides that:

> Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

42 Pa.C.S.A. § 7532.

In her brief, Mother cites to **Nationwide Mut. Ins. Co. v. Wickett**, 763 A.2d 813 (Pa. 2000), to support the proposition that an order in a declaratory judgment action is immediately appealable. In **Wickett**, our supreme court examined a trial court's order sustaining preliminary objections and dismissing some, but not all, of the defendants in an action. There, an insurance company, on its own behalf and on behalf of its insureds, filed preliminary objections in the underlying declaratory judgment actions that alleged that the Workers' Compensation Act provided the

exclusive remedy for the employee injured in an automobile accident and the estate of the decedent who was killed in that accident so that those plaintiffs were precluded from recovering uninsured motorist benefits under the then-relevant Motor Vehicle Financial Responsibility Law. By granting the insurance company's preliminary objections, the trial court essentially concluded that neither the injured employee nor the decedent's estate could recover from the insurance company and, consequently, its insureds, which, therefore, declared the legal rights of those particular parties. Accordingly, our supreme court ruled that the order granting those preliminary objections was a final and immediately appealable order under the Declaratory Judgments Act, even though, following its entry, other claims and parties remained in the lawsuit. *Id.* at 817-818.

Since **Wickett**, our supreme court and this court have distinguished and limited the breadth of its holding. In **Pa. Bankers Ass'n V. Pa. Dep't of Banking**, 948 A.2d 790 (Pa. 2008), our supreme court rejected plaintiff-banks' argument that an order sustaining preliminary objections on one of seven claims it brought against the defendant constituted a final order pursuant to the Declaratory Judgments Act because it foreclosed the banks from proceeding against the defendant on that particularly theory of recovery. In rejecting that argument, our supreme court distinguished the **Bankers Ass'n** order from the **Wickett** order. Unlike the **Bankers Ass'n** order, the **Wickett** order dismissed all claims against defendant insurance

company and its insureds, which precluded plaintiffs from recovering against those defendants and, essentially, put plaintiffs out of court with respect to those particular defendants. Unlike the **Wickett** plaintiffs, the "plaintiff-banks [in **Pa. Bankers Ass'n**] 'might still be able to obtain the relief they are seeking [] based on one of their alternative theories pending before the [trial court].'" **Id.** at 474. Therefore, the **Bankers Ass'n** order was interlocutory and unappealable.

Additionally, this court discussed and distinguished **Wickett** in our **en banc** decision in **Modern Equip. Sales & Rental Co. v. Main St. Am. Assurance Co.**, 106 A.3d 784 (Pa.Super. 2014) (**en banc**). There, Modern Equipment Sales & Rental Co. ("Modern") leased a track loader from United Construction Services ("UCS"). The track loader was subsequently involved in an accident, and a personal injury lawsuit was initiated. Modern brought a declaratory judgment action on four grounds that claimed that under the track loader lease terms and/or the Main Street America Assurance Co. ("Main Street") insurance policy, UCS and Main Street had a duty to defend Modern in the underlying personal injury action; that Main Street violated its duty to defend; that Main Street violated its duty to indemnify Modern as an additional insured; and that Main Street acted in bad faith. **Id.** at 786. Modern then filed a partial motion for summary judgment claiming that Main Street violated its duty to defend. Main Street filed a motion for summary judgment on three of the four counts set forth against it in

Modern's complaint. The trial court denied Modern's partial motion for summary judgment and granted Main Street's motion as to counts II, III, and IV of Modern's complaint. ***Id.***

On appeal, this court quashed Modern's appeal from the trial court's order denying it partial summary judgment because the trial court did not address Modern's alternative request for relief. We emphasized that:

> [O]ur Supreme Court made clear that its holding in ***Wickett*** did not render an order, that did not fully release a party or ***completely resolve the dispute***, a final order. Rather such an order would be deemed a partial declaration of the parties' rights and would not be immediately appealable.

***Id.*** at 788 (citation omitted; emphasis in original).

Although we can find no cases in the context of a custody dispute that have applied the ***Wickett/Pa. Bankers Ass'n*** analysis, it seems clear that the same tenets of appealability should apply. The trial court's order denying declaratory relief determined that a valid sperm-donation contract represented by text messages and oral statements did not exist and that, consequently, it was not necessary to determine the non-existent contract's enforceability. (Trial court opinion and order, 6/21/16 at 1-4.) The trial court further reaffirmed its previous temporary order granting Father standing to pursue custody. (***Id.*** at 4.) As asserted by the trial court, a finding that no sperm-donation contract exists does not vitiate the court's determination that Father has standing to seek custody of O.P.S. as the child's biological father. The declaratory judgment order did nothing more

than deny one of Mother's defenses to Father's custody action and did not ultimately decide affirmatively or negatively the rights of the parties in the custody action. Stated differently, it did not completely resolve the custody dispute between Mother and Father.

We find further support for quashal looking to our supreme court's revision of Pa.R.A.P. 341. Pennsylvania Rule of Appellate Procedure 341 provides, among other things, that an appeal may be taken as of right from a "final order" of a trial court. Pa.R.A.P. 341(a). Rule 341 defines "final order" as any order that "disposes of all claims and of all parties" or "is entered as a final order pursuant to paragraph [Pa.R.A.P. 341(c)]." Pa.R.A.P.(b)(1), (3). Subsection (c) provides:

> **(c)** **Determination of finality.--**When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other government unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order. . . .

Pa.R.A.P. 341(c).

Rule 341(b) was rescinded on December 14, 2015, effective April 1, 2016, and Mother filed her notice of appeal to this court on July 15, 2016,

which was after the effective date of the rescission. Former Rule 341(b) included within the meaning of a "final order" any order that "is expressly defined as a final order by statute." The notes regarding the rescission of Rule 341(b) explain that the rescission:

> eliminated a potential waiver trap created by legislative use of the adjective "final" to describe orders that were procedurally interlocutory but nonetheless designated as appealable as of right. Failure to appeal immediately an interlocutory order deemed final by statute waived the right to challenge the order on appeal from the final judgment. Rescinding subparagraph (b)(2) eliminated this potential waiver of the right to appeal. If an order designated as appealable by a statute disposes of all claims and of all parties, it is appealable as a final order pursuant to Pa.R.A.P. 341. If the order does not meet that standard, then it is interlocutory regardless of the statutory description. Pa.R.A.P. 311(a)(8) provides for appeal as of right from an order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims or of all parties and, thus, is interlocutory; Pa.R.A.P. 311(g) addresses waiver if no appeal is taken immediately from such interlocutory order.

> One of the further effects of the rescission of subparagraph (b)(2) is to change the basis for appealability of orders that do not end the case but grant or deny a declaratory judgment. ***See*** [***Wickett***, 763 A.2d at 818; ***Pa. Bankers Ass'n***, 948 A.2d at 798.] The effect of the rescission is to eliminate waiver for failure to take an immediate appeal from such an order. A party aggrieved by an interlocutory order granting or denying a declaratory judgment, where the order satisfies the criteria for "finality" under [***Pa. Bankers Ass'n***] may elect to proceed under Pa.R.A.P 311(a)(8) or wait until the end of the case and proceed under subparagraph (b)(1)of this rule.

Notes, Pa.R.A.P. 341.

Mother is not asserting that the declaratory judgment order is immediately appealable under Pa.R.A.P. 311(a)(8). In any event, as allowed by the rescission of Rule 341(b), Mother may appeal the impact of the declaratory judgment order once a final order has been entered below. With respect to custody orders, this court has held that "a custody order is considered final and appealable only if it is both: (1) entered after the court has completed its hearings on the merits; and (2) intended by the court to constitute a complete resolution of the custody claims pending between the parties." ***Moyer v. Gresh***, 904 A.2d 958, 963 (Pa.Super. 2006) (citation omitted).

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/1/2017