35 A.3d 4

COMMONWEALTH of Pennsylvania, Appellee

v.

Ernest PORTER, Appellant.

Supreme Court of Pennsylvania.

Submitted March 8, 2010.

Decided Jan. 19, 2012.

512

Billy Horatio Nolas, Defender Association of Philadelphia, Philadelphia, for Ernest Porter.

Hugh J. Burns, Philadelphia, Tracey L. Kavanagh, Philadelphia District Attorney's Office, Amy Zapp, Harrisburg, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## ORDER

Chief Justice CASTILLE.[1]

**AND NOW**, this 19th day of January, 2012, upon review of Appellant's Motion for Recusal and the Commonwealth's Reply in Opposition to the Motion, the Motion for Recusal is **DENIED**.

## OPINION

Appellant Ernest Porter, a death-sentenced prisoner, appeals from the order of the Court of Common Pleas of Philadelphia County denying as untimely his serial petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546; the pleading raised a claim under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[2] After the appeal was briefed on the timeliness merits and submitted, the parties, upon direction of this Court, filed supplemental briefs addressing the jurisdictional issue of whether the PCRA court's order was final and appealable. Upon review, we determine that the order below is appealable and, on the merits, that the court's time-bar determination is correct; thus, we affirm. We also address: (1) the circumstances creating uncertainty respecting appealability, in an effort to ensure that those circumstances do not arise again; and (2) relatedly, the circumstances creating the unacceptable delay in this case, so that PCRA courts throughout Pennsylvania will take measures to avoid such delays. Finally, we direct the PCRA court to promptly dispose of appellant's long-pending prior PCRA petition, which raised an issue under *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).[3]

1. This matter was reassigned to this author.

2. Whether the pleading below was a separate serial "petition" or an amendment of a pending serial petition is a point of contention we address below.

3. This Opinion is joined in its entirety by Messrs. Justice Eakin and McCaffery; Mr. Justice Saylor joins this Opinion with the exception of Parts III and V; and Madame Justice Orie Melvin joins this Opinion

## I. BACKGROUND

Over twenty-six years ago, on April 27, 1985, appellant robbed and murdered Raymond Fiss as Mr. Fiss was opening his beauty shop in Philadelphia. On February 26, 1986, a jury found appellant guilty of first degree murder, robbery, and a firearms offense; the next day, the same jury sentenced appellant to death, finding a single aggravating circumstance (murder during commission of a felony) and no mitigators. This Court affirmed in *Commonwealth v. Porter*, 524 Pa. 162, 569 A.2d 942 (1990), *cert. denied*, 498 U.S. 925, 111 S.Ct. 307, 112 L.Ed.2d 260 (1990), *rehearing denied*, 498 U.S. 1017, 111 S.Ct. 593, 112 L.Ed.2d 597 (1990); and appellant's first PCRA petition concluded with this Court's affirmance of the denial of relief in *Commonwealth v. Porter*, 556 Pa. 301, 728 A.2d 890 (1999). Appellant's current counsel, Billy H. Nolas, Esq., now of the Philadelphia-based Federal Community Defender's Office ("FCDO"), represented appellant on the PCRA appeal.[4] Appellant then filed a federal *habeas corpus* petition in the U.S. District Court for the Eastern District of Pennsylvania.

In August 2002, appellant returned to Pennsylvania state court, with Attorney Nolas filing a second PCRA petition, raising a single new claim: that appellant was mentally retarded under the U.S. Supreme Court's then-recent decision in *Atkins v. Virginia*.[5] Thereafter, in June 2003, the federal

with the exception of Part V. Mr. Justice Baer files a Dissenting Opinion in which Madame Justice Todd joins.

4. At the time, Attorney Nolas and his co-counsel, Robert B. Dunham, Esq., were affiliated with the Center for Legal Education and Defense Assistance ("CLEADA"), an organization which involved itself in the representation of Pennsylvania capital defendants. Attorneys Nolas and Dunham were hired by what is now identified as the FCDO (an organization that has employed various monikers over the years) once CLEADA disbanded, and the FCDO began to undertake such representations in capital cases throughout Pennsylvania. Nolas is the only lawyer listed on the FCDO pleadings here.

5. An *Atkins* claim, if sustained, renders a capital murderer ineligible for the death penalty. For that reason, this Court has assumed that *Atkins* applies retroactively and is available even to capital PCRA petitioners such as appellant, who exhausted their direct appeal and PCRA rights before *Atkins* was decided. Thus, this Court has held that a serial PCRA petition presenting a colorable *Atkins* claim is cognizable under

district court decided appellant's federal *habeas* petition. *Porter v. Horn*, 276 F.Supp.2d 278 (E.D.Pa.2003). The district court dismissed appellant's guilt phase claims, but granted conditional penalty phase relief premised upon a finding of instructional error under the Third Circuit's precedent construing *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), a case decided after appellant's trial. *Porter*, 276 F.Supp.2d at 311. Thereafter, the parties filed cross-appeals to the Third Circuit, which still have not been decided. Appellant's federal appeal presumably is limited to the issues the district court certified for appeal.[6] *See* 276 F.Supp.2d at 364–65. The Commonwealth's cross-appeal presumably concerns only the *Mills* issue.

At some point after appellant's *Atkins* serial petition was filed, the PCRA court apparently was persuaded to defer consideration. The existing certified record does not reveal when or how this came to pass. The record contains no motion to place the matter in abeyance, no order of abeyance entered by the PCRA court, and no statement of the reason the *Atkins* petition was set aside.[7] It was not unusual to

42 Pa.C.S. § 9545(b)(1)(iii), the exception to the PCRA time-bar governing new constitutional rights that apply retroactively, so long as the claim is raised within sixty days of the decision in *Atkins*, as required by 42 Pa.C.S. § 9545(b)(2). *Commonwealth v. Bracey*, 604 Pa. 459, 986 A.2d 128, 134 (2009); *Commonwealth v. Miller*, 585 Pa. 144, 888 A.2d 624, 629 n. 5 (2005).

6. A state prisoner's federal *habeas* appeal rights are limited by 28 U.S.C. § 2253, which directs the district court to issue a "certificate of appealability" allowing appeal only of those issues upon which the petitioner has made a "strong showing of the denial of a constitutional right." *Commonwealth v. Morris*, 565 Pa. 1, 771 A.2d 721, 734 (2001) (citation omitted).

7. The certified record available is a "duplicate record" the Clerk of Quarter Sessions "prepared from Photostats of available court documents and notes of testimony," because the Clerk could not locate the original record. Presumably, the original record is lodged in federal court.

After this appeal was submitted and supplemental briefs addressing jurisdiction were filed, the FCDO filed a Motion for this author's recusal. The FCDO attached a copy of an extra-record letter from the Commonwealth to the PCRA judge purportedly explaining the initial reason for setting the *Atkins* claim aside. We discuss this proffer where

refrain from deciding *Atkins* cases in the immediate wake of the decision, because the High Court left it to the individual states to determine how to implement *Atkins,* including the fixing of a standard to determine mental retardation. *See, e.g., Commonwealth v. Bracey,* 604 Pa. 459, 986 A.2d 128, 130 (2009). Any delay for that purpose ended in 2005, when this Court addressed the *Atkins* standard in *Commonwealth v. Miller,* 585 Pa. 144, 888 A.2d 624 (2005).

On June 15, 2006, less than six months after *Miller* announced the *Atkins* review standard, appellant filed what counsel called a "supplement and amendment" to the *Atkins* petition. The 2006 filing did not apprise the PCRA court of *Miller,* nor did it request a determination of the *Atkins* claim. Nor was the "supplement and amendment" relevant to *Atkins.* The filing instead raised a new claim under *Brady v. Maryland,* which appellant said had ripened in the prior sixty days; this claim involved possible impeachment of a prosecution witness, Vincent Gentile, premised upon a non-notarized statement Gentile allegedly gave to a FCDO investigator on April 20, 2006. There is no indication in the docket or elsewhere that appellant either sought, or was granted, leave to amend his existing *Atkins* petition to add the new *Brady* claim.

Following written submissions by the parties on the *Brady* issue, the PCRA court heard argument on September 25, 2007. Attorney Nolas stated that the PCRA court had held the 2002 *Atkins* petition "in abeyance," awaiting the outcome of the federal *habeas corpus* cross-appeals. N.T., 9/25/07, at 12. Counsel also stated that the Third Circuit was holding the federal cross-appeals, at his request, until appellant could exhaust his new *Brady* claim in state court. *See, e.g., id.* at 8 ("[T]he Third Circuit . . . has held the case in abeyance so this [*Brady* ] issue could be resolved[.]"). Counsel then sought permission to "depose" witness Gentile. The prosecutor focused on the gate-keeping PCRA jurisdictional issue of timeliness, including the fact that the Superior Court had found a similar claim respecting the same witness, in another of

relevant, *infra.* The recusal motion is decided by a separate, single Justice Opinion filed contemporaneously with this Opinion.

appellant's criminal matters, to be time-barred. The prosecutor also argued that the deposition request was a "fishing expedition," and noted that the PCRA required appellant to show an entitlement to an evidentiary hearing first.

The PCRA court focused on the time-bar jurisdictional issue and ruled that "[t]he petition is denied." The court elaborated that it had read the parties' pleadings, and stated: "I am denying the PCRA petition on the grounds that it is not timely and it does not meet the requirements for the *Brady* material." Following the court's denial of the *Brady* petition, Attorney Nolas brought up the pending *Atkins* petition. Counsel did not request a decision on *Atkins,* which would resolve all pending issues in state court, possibly have appellant removed from death row if the *Atkins* claim succeeded, and free up the Third Circuit to pass upon the federal cross-appeals. Instead, counsel adverted to the *Atkins* petition as leverage to relitigate his request to depose Gentile, even though the court had just determined that the claim was time-barred. The following exchange occurred:

> Nolas: This is a separate issue before the Court pertaining to *Atkins* [ ] in our submission that [appellant] has mental retardation.
>
> Court: I didn't deal with that.
>
> \* \* \*
>
> Nolas: That's before the Court. If you don't deny that today, what's wrong with taking [Mr. Gentile's] deposition?
>
> Court: The two don't mix together. What have you submitted on the *Atkins* claim other than the fact that you are claiming that he was mentally deficient?
>
> Nolas: Yes, that's our submission. [Appellant] has mental retardation.
>
> \* \* \*
>
> Court: Is that issue [*Atkins* ] before the Third Circuit?
>
> Nolas: It is not before the Third Circuit.
>
> Court: So that's squarely with me?

Nolas: Yes, Your Honor. I know Your Honor held it in abeyance because the Third Circuit reversed the death sentence and the Commonwealth is appealing that and [appellant is] appealing the denial of relief of the guilt phase from the Third Circuit. So I think the reasoning before was holding in [ ] abeyance to see what the Third [C]ircuit would do because if there's no death sentence then there's no point in us doing an *Atkins*.

Court: So there is no death sentence. All it is is an appeal?

ADA: Yeah, exactly. So I was going to suggest that you send [a] 907 [8] notice just on the after discovered evidence slash *Brady* claim. And we'll specify that that's the claim that you are denying today and then we'll leave in abeyance to [sic] the *Atkins* to hear from the Third Circuit.

Court: Let me see if I understand this. The Third Circuit has already taken the death penalty off the table.

Nolas: No, Your Honor. The District Court granted relief to [appellant] on an instructional error at the penalty phase. The Commonwealth appealed that to the Third Circuit. That appeal is pending [in] the Third Circuit along with an appeal from us arguing [other issues].

Court: So the death penalty is still on the table?

Nolas: It's still on the [t]able potentially, yes.

* * *

ADA: I misspoke.

Nolas: And that's why we asked Your Honor to look at the *Atkins* issue.

Court: It appears that from what I read he won on the death penalty issue.

Nolas: He just won a new penalty phase from the District Court which is subject to [the] Commonwealth's appeal and may be subject to resentencing down the road. They didn't take the death penalty off the table.

Court: When will that issue be resolved?

8. Pa.R.Crim.P. 907 (permitting PCRA court to dismiss a petition without a hearing).

ADA: They are waiting for us.

Nolas: They were waiting for Your Honor to decide on the [*Brady* ] issue pertaining to Mr. Gentile.

Court: Okay. That's all. They [the Third Circuit] are not counting on me to deal with the *Atkins* issue?

ADA: No.

Nolas: We've told them about it, but they haven't said that you should look at it or shouldn't look at it.

Court: So I just need to do a 907 with respect to the *Brady* claim and timeliness issue surrounding the [filing].

Nolas: And I think I have to object to that because that's strange. You have a proceeding before the Court with two claims that are being raised. And I guess with a 907 notice we'd restate our objections and file a notice of appeal and then you have no jurisdiction, so it's a non-process.

Court: What are you suggesting I do?

Nolas: I suggest you let us do [Mr. Gentile's] deposition.

Court: We are beyond that. What are you suggesting that I do, rule on *Atkins?*

Nolas: I don't think you can rule on *Atkins*. I don't know[;] I haven't seen that process before, so I think I have to object.

N.T., 9/25/07, at 12–15.

The above exchange is pertinent both to the question of jurisdiction and to the federal and state court gridlock in this case. In summary, the position stated by federal counsel before the PCRA court was that:

- the PCRA court was holding the *Atkins* issue raised in appellant's 2002 serial PCRA petition in abeyance until the federal *habeas* cross-appeals, which did not include the *Atkins* claim, were decided;

- the *Atkins* issue was held because the Third Circuit might affirm the district court's order, effectively granting a new penalty hearing;

- the Third Circuit was not holding the federal appeals in abeyance for the PCRA court to rule on the *Atkins* petition; on counsel's request, it was holding only for appellant to exhaust his new claim sounding in *Brady;*
- the PCRA court could not dispose of the *Brady* claim because counsel would object in light of the pendency of the *Atkins* claim and would file an appeal to deprive the court of jurisdiction;
- the PCRA court could not rule on *Atkins,* because counsel would object to that course as well; and
- the only action the PCRA court could take was to let counsel depose a witness on the *Brady* claim, even though the PCRA court had already found the claim time-barred.

The PCRA court did not accept that its only choice was perpetual stasis and federal-state gridlock, during which counsel sought to develop a time-barred *Brady* claim. The court advised that a Rule 907 notice of dismissal of "the petition" would be issued that afternoon, and scheduled actual dismissal for November 8, 2007. The September 25, 2007 cover letter on the Rule 907 dismissal Notice, addressed to appellant, stated that "your *PETITION FOR POST CONVICTION COLLATERAL RELIEF* is being dismissed." The Notice identified the reasons for dismissal as: (1) "[t]he issue(s) raised in the PCRA petition filed by your attorney (is)(are) without merits; and (2) "[y]our petition is time-barred...." The November 8, 2007 order likewise stated that appellant's PCRA "petition" was being dismissed.

In his Notice of Appeal, Attorney Nolas stated that appellant was appealing "from each and every aspect of the Court of Common Pleas' Order of September 25, 2007, made orally and in open Court and entered on November 8, 2007, denying [appellant's] Post Conviction Relief Act Petition." Similarly, in the Jurisdictional Statement attached to the Notice of Appeal, counsel stated that this Court had jurisdiction because "[t]he lower court's jurisdiction was properly invoked and thus this Court has jurisdiction from [sic] the timely appeal of the denial of the petition." Jurisdictional Statement, 1 ¶ 2. Coun-

sel elaborated that: "Appellant seeks review of each and every part of the Order and opinion denying his request for a new trial, and other relief, and review of rulings made during the course of the proceedings, as well as all claims raised in Appellant's PCRA petition, in all supplemental filings and orally during proceedings before the Court." *Id.* at 2 ¶ 3. All references were to denial of a "petition" encompassing every ruling below.

## II. JURISDICTION

### A.

Given the procedural oddity that appellant's serial *Brady* petition was filed and decided while his *Atkins* petition, also a serial pleading, remained pending, this Court *sua sponte* directed supplemental briefing addressed to jurisdiction, *i.e.*, whether the PCRA court's order of dismissal was final and appealable. In his supplemental brief, appellant argues that his appeal is improper. Appellant posits that there was a single serial PCRA petition below, raising two claims: the original *Atkins* claim, and the *Brady* claim, which appellant added by amendment. Citing Pa.R.Crim.P. 905(A), appellant says that a PCRA petitioner may amend a pending serial PCRA petition to add a new serial claim. Citing Pa.R.Crim.P. 907 and 910, appellant then argues that the PCRA court's "dismissal of the *Brady* claim, without ruling on the *Atkins* claim, was not an appealable final order." Appellant does not seek to withdraw the appeal, but instead argues that this Court should quash it without prejudice to his ability to present the *Brady* claim "when there is proper jurisdiction." Notably, Attorney Nolas, who argued to the PCRA court that it could not decide the *Atkins* claim, and thereby could not produce a final order under counsel's current theory, does not suggest how a final appealable order could ever be entered. Nor does counsel explain how the *Atkins* procedural ruling below—a ruling not to decide the claim, at counsel's urging— is not itself a ruling on the claim, thereby subject to appeal.

The Commonwealth's supplemental brief argues that the appeal is a jurisdictional "nullity" for a different reason. In the Commonwealth's view, appellant's 2006 effort to amend his 2002 serial *Atkins* petition to add a new *Brady* claim was an improper attempt to subvert the PCRA time-bar, via manipulation of the Criminal Rules of Procedure authorizing PCRA amendments. The Commonwealth warns that if PCRA petitioners may amend serial PCRA petitions at will, abuse and maneuvering will ensue, particularly in capital cases. The Commonwealth argues that prohibiting such amendments is the only approach that respects the PCRA time-bar, *see Commonwealth v. Moore*, 569 Pa. 508, 805 A.2d 1212, 1225 (2002) (Castille, J., joined by Newman and Eakin, JJ., concurring and dissenting); it is also the approach the U.S. Supreme Court has taken respecting the federal *habeas corpus* time-bar, *Mayle v. Felix*, 545 U.S. 644, 650, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005); *see also United States v. Duffus*, 174 F.3d 333, 337–38 (3d Cir.1999); and the same rule applies to civil statutes of limitation. *See Kincy v. Petro*, 606 Pa. 524, 2 A.3d 490, 497 (2010). Since appellant had no right to unilaterally amend a pending serial petition to add an unrelated and time-barred *Brady* claim, the Commonwealth submits, he had no right to appeal an order disposing of the improper attempt to amend. The Commonwealth requests that we dismiss this appeal and remand for disposition of the *Atkins* petition.

## B.

 Appellant's position that his *Brady* claim was an amendment of the pending *Atkins* petition is belied by the record. Our procedural Rules contemplate that amendments to pending PCRA petitions are to be "freely allowed to achieve substantial justice." Pa.R.Crim.P. 905(A). And, it is true that Rule 905 does not explicitly distinguish between initial and serial petitions. However, appellant is mistaken in arguing that Rule 905 amendments are self-authorizing, *i.e.*, that a petitioner may simply "amend" a pending petition with a supplemental pleading. Rather, the Rule explicitly states that amendment is permitted only by direction or leave of the

PCRA court. In this case, there is no indication that appellant ever requested, or that the PCRA court ever granted, leave to amend the *Atkins* petition at all, much less to amend it to include a new and unrelated claim. The fact that counsel labeled the *Brady* petition a "supplement and amendment," without authorization, does not mean the pleading amended and became part of the pending *Atkins* petition. Misdesignation does not preclude a court from deducing the proper nature of a pleading. *See Commonwealth v. Abdul–Salaam*, 606 Pa. 214, 996 A.2d 482 (2010) (involving deceptive labeling of PCRA pleading). *Cf.* Pa.R.C.P. No. 126. Appellant's "amendment" argument is baseless.

Moreover, it is clear that the PCRA court treated appellant's *Brady* pleading as a separate petition; as counsel noted in his appeal papers, the PCRA court's order dismissed "the petition," not an "amendment." [9] The PCRA court characterized its order as a ruling on a serial PCRA "petition" that had raised a new claim subject to its own time-bar analysis. Significantly, this approach accepted the *Brady* claim precisely as Attorney Nolas initially argued it to the PCRA court and exactly as he had presented it to the Third Circuit in securing a federal stay. Counsel said he filed the new claim within sixty days of its discovery so as to comply with the PCRA time-bar. He posed it as a separate serial claim that could and must be ruled upon, while the *Atkins* petition remained in abeyance, so that the Third Circuit could proceed with the stayed federal cross-appeals, which in turn had, according to counsel, led to the *Atkins* petition being held "in abeyance." Counsel explicitly told the PCRA court that the Third Circuit was "waiting for Your Honor to decide on the issue pertaining to Mr. Gentile." N.T., 9/25/07, at 14. Likewise, in securing a stay of the federal appeals, counsel told the Third Circuit that the sole purpose of returning to state court was to litigate the

9. Because the PCRA court did not grant leave to amend, and did not treat the *Brady* petition as an improper amendment, we need not pass upon the Commonwealth's jurisdictional argument. Rather, the complicating factor in what would otherwise be a straightforward analysis of the timeliness of a serial PCRA petition is the court's holding the *Atkins* petition in abeyance. We address that factor in Part III, *infra*.

new *Brady* claim, giving the Circuit the impression that the *Brady* claim was immediately reviewable, and that the resulting delay pending state exhaustion would be minimal.

The PCRA court's opinion corroborates that it treated the *Brady* claim as a separate PCRA petition, and concluded that it lacked jurisdiction because the petition was time-barred (and that, in any event, the claim failed). The court noted appellant's filing of the 2002 *Atkins* petition in one paragraph. In the following paragraph, the court recounted that the *Brady* issue was forwarded in a pleading labeled a "supplemental and amended PCRA motion," but thereafter repeatedly adverted to it simply as "the petition" or "the instant PCRA petition" without further reference to the *Atkins* petition. The opinion's comprehensive discussion of the PCRA time-bar and its exceptions addressed *Brady* alone and made no comment upon the *Atkins* petition. *See* PCRA Ct. Op. at 3–4, 8, 9, & 16. In short, the PCRA court treated the *Brady* filing as a distinct collateral attack ripe for "resolution"—just as federal counsel had argued it was in both state and federal court, up until the point the court ruled against counsel, and just as counsel later treated it when he filed his Notice of Appeal and his initial brief.

## C.

The PCRA court's treatment of the *Brady* petition as separate and distinct was also authorized under the terms of the PCRA. The statute speaks in singular terms of "the claim" or "the right" which is the subject of a serial PCRA "petition," as follows:

(1) Any **petition** under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise **the claim** previously was the result of interference by government officials with the presentation of **the claim** in violation of the Constitution or laws of

this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which **the claim** is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the **right** asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date **the claim** could have been presented.

42 Pa.C.S. §§ 9545(b)(1) & (2) (emphases added). These provisions are claim-specific, as they would have to be, given the sixty-day filing restriction, and the fact that the statute addresses "exceptional" claims. Particularly given the shifting and idiosyncratic contentions Attorney Nolas made to the court concerning the appropriate course for the proceedings, the PCRA court sensibly viewed its decision as treating the *Brady* claim as a separate serial petition, which it resolved by a definitive final order.

█ The complication is whether the PCRA court had the authority to dismiss the *Brady* petition while the *Atkins* petition was in abeyance. Setting aside the question of the propriety of holding the *Atkins* petition in abeyance, *see* Part III, *infra*, nothing in the PCRA or our decisional law prevents such treatment; and there is no impediment of a jurisdictional nature.

No case from this Court addresses this scenario; but, notably, the nearest case, *Commonwealth v. Lark*, 560 Pa. 487, 746 A.2d 585 (2000), does not so limit the PCRA court. *Lark* holds only that a PCRA trial court cannot entertain a new PCRA petition when a prior petition is still under review on appeal:

Appellant could not have filed his second PCRA petition in the court of common pleas while his first PCRA petition was

still pending before this [C]ourt. The trial court had no jurisdiction to adjudicate issues directly related to this case; only this [C]ourt did. A second appeal cannot be taken when another proceeding of the same type is already pending. . . .

746 A.2d at 588 (citation omitted); *accord Commonwealth v. Jones*, 572 Pa. 343, 815 A.2d 598, 604–05 (2002) (Opinion Announcing the Judgment of the Court); *see also Commonwealth v. Bond*, 572 Pa. 588, 819 A.2d 33, 52 (2002) ("[I]n [*Lark* ], this Court held that this precise type of new claim, alleged in a remand motion before this Court during the pendency of a PCRA appeal, must be filed as a second PCRA petition, which may not be filed until this Court completes its review of the pending PCRA matter. Permitting a PCRA petitioner to append new claims to the appeal already on review would wrongly subvert the time limitation and serial petition restrictions of the PCRA. Thus, under *Lark*, this Court cannot entertain this claim, which was not raised in the PCRA petition which is the subject of the appeal before us.") (citations omitted). *Lark* does not speak to the PCRA court's authority in situations like this one, where no appeal was pending, and where a prior petition was set aside, in accordance with the petitioner's demand that it not be decided. Nor does *Lark* speak to a circumstance where the new serial claim is forwarded in state court in conjunction with counsel's representation to the Third Circuit that it is immediately reviewable and a corollary representation by counsel in the PCRA court that pending federal *habeas* cross-appeals cannot proceed until the PCRA court acts on the new claim.

Furthermore, the PCRA court here displayed commendable respect for the federal courts, given the circumstances as federal counsel had argued them. Attorney Nolas's position, if accepted, would create an open-ended federal/state gridlock occasioned by: (1) counsel securing a stay of the federal *habeas* cross-appeals in order to exhaust a new *Brady* claim, and (2) then arguing, in the PCRA court, that the court could not finally decide the *Brady* claim or the *Atkins* claim. In the meantime, the *Atkins* petition was held in abeyance. The

necessity for prompt and final disposition of the ripe *Brady* petition was heightened after counsel essentially argued to the PCRA court that it was trapped, *i.e.*, that neither the federal court nor the state court could proceed to decide appellant's collateral attacks. The PCRA court acted promptly after recognizing the choreographed absurdity of delay argued to it by federal counsel, and wisely sought to open the way to move appellant's appeals forward in both forums.

## D.

██ To hold that an appeal such as this is not final would also have untoward consequences in cases, unlike this one, where no strategy of delay is being pursued, and the PCRA petitioner instead seeks to have all of his claims decided. To conclude that the PCRA court ruled on only one of two distinct claims in a single serial petition, as appellant alleges we should, would not make the order below interlocutory. The PCRA court's order here—the appealable piece of paper—dismissed the PCRA petition, not merely a claim within it. Nor did the PCRA court purport to render a "partial disposition," *i.e.*, an "order" resolving some "claims," while ordering a hearing on others, without dismissing the entire petition. *See* Pa.R.Crim.P. 910 cmt. (adverting to partial dispositions under Pa.R.Crim.P. 907(3)). On its face, the PCRA court's dismissal order here was total, final and appealable, just as counsel said it was in his Notice of Appeal and Jurisdictional Statement. *See* Pa.R.Crim.P. 910 ("An order granting, denying, dismissing, or otherwise finally disposing of a petition for post-conviction collateral relief shall constitute a final order for purposes of appeal.").

██ If there was error in the proceedings that produced the order dismissing the "petition" in its entirety, that is a matter for objection—and specific notice was given to appellant before entry of the order here to allow for objection—and appeal. Thus, if the PCRA court was obliged to rule upon all of appellant's pending but unrelated serial "claims," and erred because it failed to address all "claims" in dismissing the entire "petition," appellant could have raised that objection

below and renewed it upon appeal. Any defendant not pursuing a strategy of delay would do so. Indeed, this Court routinely sees such claims on capital PCRA appeals, where a defendant argues that the PCRA court erred in failing to individually address all claims. But, that issue-specific circumstance creates no jurisdictional impediment to appeal here, for the petition has been denied. Indeed, if a PCRA court dismisses an entire PCRA petition, while declining to rule upon a discrete claim, the petitioner's only recourse is an appeal. Otherwise, a PCRA court could insulate its "partial" ruling from review and correction merely by ignoring certain claims, while dismissing the petition as a whole.

The point is simple and fundamental, obscured here only by the fact that federal counsel's strategy—pursued in both state and federal court—has been to avoid having any of appellant's collateral claims decided any time soon. This is a legally dubious, but common, strategy peculiar to certain capital defense counsel, who view delay as an end in itself for those condemned under a sentence of death. *See Rhines v. Weber*, 544 U.S. 269, 277–78, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005) (cautioning that, while many *habeas* petitioners might desire speedy resolution, "not all petitioners have an incentive to obtain federal relief as quickly as possible. In particular, capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death."). But, consider a non-capital PCRA petitioner serving a term of years, with no incentive to pursue delay and decision-avoidance. If the PCRA court dismisses that petitioner's "petition," without addressing all "claims" in the petition, is that dismissal not appealable? Under appellant's theory, the order is not appealable, which would leave such PCRA petitioners without any recourse: the trial court is finished with them, and the appellate court will not hear them. This consequence would be additional collateral damage of a decision that rewarded dubious, delay-oriented litigation strategies.

If this case, in fact, involves but a single serial PCRA petition with two unrelated claims, as appellant states, it does

not change the fact that the order below undeniably dismissed that petition, and such an order must be viewed as final and appealable.

However viewed, the circumstance giving rise to the complication here is the practice of holding a serial PCRA petition in abeyance pending federal review of previously exhausted claims, which we will now address.

## III. HOLDING THE *ATKINS* PETITION IN ABEYANCE

Attorney Nolas's presentation and characterization of appellant's serial *Brady* claim in both the federal court and the PCRA court, which secured delay in the proceedings in both court systems, was possible only because appellant's *Atkins* petition was held in abeyance. The record argument made by Attorney Nolas below—which was not disputed by the Commonwealth, and which apparently was accepted by the court— was that a serial PCRA petition raising a question of death eligibility (i.e., *Atkins* relief) should be held in abeyance merely because the defendant was pursuing lesser, parallel federal *habeas* review of prior claims. This notion is mistaken.[10] Notably, counsel cited no authority when he told the

10. In a subsequent Motion seeking my recusal, Attorney Nolas has attached a non-record letter dated August 13, 2003, from an Assistant District Attorney to the PCRA judge which, counsel says, shows that the *Atkins* petition was initially held upon the request of the Commonwealth. The Commonwealth's letter specifies two reasons to "stay further proceedings": (1) the federal district court had recently granted penalty phase relief (on June 26, 2003), and thus the *Atkins* claim could be addressed when that new penalty hearing was held; and (2) the Pennsylvania General Assembly was then considering legislation to establish the "procedures and criteria" to determine *Atkins* claims. Three of the Commonwealth's four substantive paragraphs in the letter concerned the second point. The Commonwealth noted the impracticality of passing upon *Atkins*, where the U.S. Supreme Court had left it up to the states to implement *Atkins*, but the General Assembly had yet to do so, and thus, there was no governing authority. The Commonwealth also noted the potential futility of the PCRA court fashioning its own manner of implementing *Atkins*, since the Legislature could opt for a different standard.

Notably, Attorney Nolas's explanation to the PCRA court below of the reasons the *Atkins* petition was being held does not square with the

PCRA court, "I don't think you can rule on *Atkins*." N.T., 9/25/07, at 15. That is so, because no such authority exists.

■ It may be prudent for a PCRA court to await a pending decision from a court which binds it—the U.S. Supreme Court or this Court, when it comes to capital cases—if that decision will control the issue before the PCRA court. There may be reason to await hoped-for clarifying legislation; *Atkins* cases were a prime example, until it became clear that the General Assembly would not act, and this Court had to step in and address the issue. But, the notion that a PCRA court should hold a serial PCRA petition in abeyance while a petitioner pursues different claims on federal *habeas* review, in the lower federal courts, serves only to create unwarranted delay in capital cases. There is no reason why federal *habeas* petitions and serial state collateral petitions cannot proceed simultaneously. Simultaneous decision-making advances the fundamental concern of finality. The PCRA does not require or authorize such delay; nor do this Court's procedural Rules. State PCRA repose, on the other hand, rewards strategic ping-ponging delay between state and federal court and consequent litigation abuse.

The specific reason proffered by federal counsel to the PCRA court in this case for holding the *Atkins* petition

position in the Commonwealth's letter. Attorney Nolas said nothing of the absence of standards for the implementation of *Atkins*, which comprised the bulk of the Commonwealth's concern. Instead, Attorney Nolas said, the petition was held in abeyance "to see what the Third Circuit would do because if there's no death sentence then there's no point in us doing an *Atkins*." The Commonwealth's 2003 letter made no mention of the Third Circuit or cross-appeals; instead, it adverted to the prospect of an imminent new penalty hearing resulting from the federal trial-level ruling. In short, the Commonwealth requested that the *Atkins* petition be held for reasons other than the reason Attorney Nolas identified to the PCRA court below; and neither of the reasons cited in the Commonwealth's 2003 letter retained any currency after this Court's 2005 decision in *Miller*.

In any event, the letter accounts for the Commonwealth's position at that time, but not for the reasons why the PCRA court actually decided to defer decision. More importantly, the letter addresses only the initial delay, and not the delay occasioned by federal counsel's litigation of the *Brady* claim; that delay began over five years ago, in June of 2006, and is addressed in Part V, *infra*.

confirms the point. Counsel stated: "I think the reasoning before was holding in [ ] abeyance to see what the Third [C]ircuit would do because if there's no death sentence then there's no point in us doing an *Atkins.*" N.T., 9/25/07, at 12. Counsel is incorrect.

Even assuming that the pendency of the Third Circuit cross-appeals was the reason for setting aside the *Atkins* petition in the first place, *but see* note 10, *supra*, the Third Circuit decision will not eliminate the need to decide the *Atkins* issue, since *Atkins* involves death eligibility. The district court granted relief on a perceived penalty phase instructional error under the Third Circuit's *Mills* precedent; *Mills* claims do not involve death eligibility. If the *Mills* ruling is reversed by the Third Circuit or the U.S. Supreme Court, and no relief is granted on appellant's cross-appeal (which does not include an exhausted death eligibility claim), appellant's death sentence will stand. If the determination is affirmed, the Commonwealth is free to seek the death penalty in a new proceeding. Either way, it is a prospective capital case and the *Atkins* issue must be decided. Any relief appellant could secure in federal court still exposes him to the prospect of a capital retrial, while a meritorious *Atkins* claim removes the prospect of death. As this Court is reminded by capital counsel in different contexts, there are other consequences of a finding of death ineligibility, including conditions of incarceration, which specifically counsel against the deferral of legitimate death eligibility claims. There simply is no legitimate reason to defer decision of an *Atkins* claim, unless it lacks merit.

But, even where the serial claim that would be deferred does not involve death eligibility, there is no legitimate reason to defer decisions on serial PCRA petitions merely because a federal *habeas* petition is pending. Acceptance of the argument federal counsel advances invites unnecessary delays—and rewards strategic abuses—in capital litigation. The state courts are not obliged to accept a complicit role in federal defense counsel strategies of delay. In the case *sub judice*, there was reason to hold the *Atkins* petition when it was first

filed, given the absence of legislative guidance, but that reason expired in 2005, when this Court acted and decided *Miller.* There also may have been a reason to hold the *Atkins* petition for a shorter period if the Commonwealth was deciding whether to pursue an appeal of the federal district court's conditional grant of penalty phase relief; if the Commonwealth accepted the federal decision, and pursued a new penalty phase, the *Atkins* issue could be litigated in the retrial setting. But, there is no reason to hold a serial PCRA petition merely because federal cross-appeals were pending on already-exhausted *habeas* claims.

■ We will direct the PCRA court to address the *Atkins* petition immediately; and we caution PCRA courts generally that they should not place serial petitions in repose merely to allow for federal *habeas* litigation of prior, exhausted claims.

## IV. THE MERITS

### A.

Initially, in arguing the merits of his challenge to the PCRA court's ruling that his *Brady* petition was time-barred, appellant repeatedly maintains that the Third Circuit's action in placing the federal *habeas* cross-appeals in abeyance indicates that the Third Circuit made a preliminary determination that the *Brady* claim was meritorious. Attorney Nolas says that he informed the Third Circuit of the serial *Brady* petition and provided it with the "same submission" briefed here. Attorney Nolas then avers that the Third Circuit would not have placed the case in "abeyance" unless it had determined that: (1) the *Brady* claim had merit, (2) it would be entertained on the merits by Pennsylvania courts, and (3) it was forwarded with diligence. As support for what is posed as this certain proposition of law, Attorney Nolas cites only to the U.S. Supreme Court's 2005 decision in *Rhines v. Weber, supra.* Brief for Appellant, 3, 8, & 10.

In fact, the Third Circuit's order does not identify any authority to explain its holding of the federal cross-appeals,

and there is not a syllable expressing a view on the underlying merits. The listing on the Third Circuit's public website, under death penalty information, merely describes the order as "temporarily staying appeals pending PA State Courts' disposition of PCRA petition." Order, 2/7/07. There is no citation to *Rhines*.[11] No less troubling is the fact that *Rhines* does not support the inferred proposition Attorney Nolas ascribes to the Third Circuit's order to hold; and the hold is difficult to square with more relevant federal *habeas* authority, which federal counsel neglects to cite.

Nothing in *Rhines* authorizes a federal court of appeals to stay a federal *habeas* appeal in order to allow a state prisoner to return to state court to exhaust a new claim that was not the subject of the ripe *habeas* appeal pending before the Circuit, and which therefore would be subject to the restrictions on serial federal *habeas* petitions contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2244(b). In *Rhines,* the federal district court was faced with a "mixed" petition containing eight claims (of thirty-five) that had not been exhausted in state court. By the time the District Court determined that eight claims were unexhausted, AEDPA's one-year time restriction on federal *habeas* petitions had expired. *See* 28 U.S.C. § 2244(d)(1) ("A 1–year period of limitation shall apply to an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court. . . ."). Prior to establishment of the AEDPA time-bar, such mixed petitions could be dismissed and the petitioner could return to state court to attempt to exhaust his unexhausted claims and then return to federal court later; or, he could delete his unexhausted claims and secure immediate review. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379

11. In its response to appellant's recusal Motion, the Commonwealth appends the federal docket, which reflects entry of an order on February 7, 2007 "granting motion by [appellant] to temporarily hold these appeals in abeyance pending the Pennsylvania state courts' disposition of his petition under the [PCRA]." The docket also indicates that the federal "stay" was over the opposition of the Commonwealth, which was filed on December 5, 2006. There is no citation to *Rhines* or any other authority.

(1982). But, after AEDPA, outright dismissal and return following state court exhaustion would have left the petitioner in *Rhines* time-barred from pursuing any federal *habeas* review at all. *Rhines,* 544 U.S. at 272–75, 125 S.Ct. 1528.

Given this particular set of circumstances, arising soon after passage of AEDPA, the district court in *Rhines* adopted a procedure to avoid AEDPA's time-bar: it issued a stay and held the federal *habeas* proceedings in abeyance until the defendant had returned to state court to exhaust his claims. The U.S. Court of Appeals for the Eighth Circuit vacated the stay, but the U.S. Supreme Court granted further review. After noting a circuit split on the issue, the High Court ultimately held that in the mixed petition context, federal **district court** stay-and-abey can be appropriate, but only if "the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." 544 U.S. at 277, 125 S.Ct. 1528. The *Rhines* Court added: "Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Id.* (citation omitted). Notably, the Court cautioned that, while many *habeas* petitioners might wish for a speedy resolution, "not all petitioners have an incentive to obtain federal relief as quickly as possible. In particular, capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death ... [and] frustrate AEDPA's goal of finality by dragging out indefinitely their federal *habeas* review.... And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all." *Id.* at 277–78, 125 S.Ct. 1528 (citation omitted).

*Rhines* thus spoke to **first** federal *habeas* petitions that were pending and undecided in district court and also subject to district court dismissal because they were mixed. *Accord Pace v. DiGuglielmo,* 544 U.S. 408, 416–17, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). That is not the case with appellant's *habeas* petition. The federal district court was not faced with a mixed petition, and it did not issue a stay-and-abey order

and defer passing upon the petition.[12] Instead, the district court in this case decided a ripe, non-mixed petition, granting appellant relief in part. Its order became final, and both sides appealed the non-mixed petition to the Third Circuit. Appellant's new *Brady* claim is not in the petition, nor is it before the Third Circuit.

Furthermore, mixed petition cases such as *Rhines* involve **timely** federal *habeas* petitions; the problem then perceived was that, if the petitioner returned to state court to exhaust his unexhausted claims, he would be faced with the time-bar under AEDPA, and no federal review at all. But in this case, appellant received full federal review of his of-right, non-mixed *habeas* petition. Appellant's new *Brady* claim obviously is not timely; it is subject to AEDPA's time and serial petition restrictions. The stay issued by the Third Circuit is not explainable by resort to *Rhines*, much less does *Rhines* support counsel's repeated, unqualified assertion that the appellate court made a preliminary finding that the *Brady* claim has merit.

Notably, federal counsel's characterization of the Third Circuit's stay as representing an expression on the *Brady* merits cannot be squared with other Third Circuit and U.S. Supreme Court precedent, which counsel fails to cite. In *Duffus, supra,* the Third Circuit held that the *habeas* petitioner could not be permitted to amend his motion for *habeas* relief after AEDPA's limitations period had expired because the proposed amendment was not a mere clarification of the claim raised in the former petition, but instead raised a new claim arising out of different facts. 174 F.3d at 338. The court held that

12. In *Heleva v. Brooks,* 581 F.3d 187 (3d Cir.2009), the Third Circuit appeared to approve a district court stay-and-abeyance procedure in a case which did not involve a mixed petition. But, *Heleva* does not change the pertinent analysis here: that case involved a timely first federal *habeas* petition, where there was uncertainty respecting the availability of state court exhaustion, and the district's court authority to stay-and-abey in that circumstance. *Heleva* says nothing about stay-and-abeyance in response to serial claims identified at the federal appellate level, after AEDPA's time restriction has expired, which are not part of the *habeas* appeal, and while the appeal from a disposed *habeas* petition is pending.

allowing the amendment would indulge an improper "end run" around AEDPA's statute of limitations. *Id.* at 336–38. The Third Circuit's refusal in *Duffus* to allow unrelated and time-barred claims or theories to be postured as "amendments" to timely-raised claims on different grounds was strengthened in *United States v. Thomas*, 221 F.3d 430 (3d Cir.2000). *Thomas* quoted extensively from *Duffus*, and held: "Under Fed. R.Civ.P. 15(c), an amendment which, by way of additional facts, clarifies or amplifies a claim or theory in the petition may, in the District Court's discretion, relate back to the date of that petition if and only if the petition was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case." *Id.* at 431. In 2005, the U.S. Supreme Court effectively endorsed the *Duffus* approach in *Mayle, supra.* 545 U.S. at 650, 125 S.Ct. 2562 ("An amended *habeas* petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.").[13]

Nothing in the Third Circuit's temporary stay order remotely suggests that the court rendered the merits assessment that federal counsel claims the order represents. The Third Circuit never cited *Rhines*, and never indicated that it accepted counsel's misrepresentation of the holding of that case. Nor is there anything in the order that opines on the merits of appellant's *Brady* claim. The Third Circuit stayed the cross-appeals for undisclosed reasons.

## B.

Turning to the merits, appellant's *Brady* petition is premised upon the non-notarized statement of Vincent Gentile, a witness at trial, which was obtained on April 20, 2006, which apparently was the day the FCDO decided to send an investi-

13. The *Mayle* Court approved the approach of the majority of circuits that "allow relation back only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." 545 U.S. at 657, 125 S.Ct. 2562 (citation omitted).

gator to talk to Gentile. Gentile was robbed by three men at gunpoint in his jewelry store three days after appellant murdered Raymond Fiss. Gentile activated an alarm and the police arrived and chased the robbers, apprehending appellant. During the police pursuit, police saw appellant discard a white bag, which they recovered, seizing a .38 caliber Colt revolver. At appellant's trial, Gentile identified appellant as the man who had robbed him; and ballistics evidence showed that the Colt revolver appellant abandoned was the weapon he used to murder Mr. Fiss.

Gentile's statement to the FCDO investigator, twenty-one years later, was in the nature of recantation, including a claim that he perjured himself when he identified appellant at trial. In the new statement, Gentile claims he did not recognize appellant at the preliminary hearing for appellant's charges of robbing Gentile. Gentile also claimed he "told a woman who worked in the court" where the preliminary hearing was held that appellant was not the robber, but the unidentified woman told him that defendants always look different once they are in court and that the evidence showed that appellant was guilty of the robbery. Gentile further claimed that, once he was told that appellant was guilty of the robbery of his store, "I did whatever the prosecutor wanted," which included his later identification testimony at appellant's murder trial as well as the trial for the robbery of his store, even though, in his "heart," he knew he was lying. Notably, federal counsel's presentation of appellant's *Brady* claim to this Court quotes Gentile's statement, but includes a bracketed interpolation: "I told a woman who worked in the court [*i.e.*, the prosecutor] that Mr. Porter was not the person. . . ." Nothing in Gentile's statement, or appellant's proffer, supports counsel's presentation, as if it were fact, that Gentile said that the "woman in court" at the preliminary hearing was the prosecutor. From his false predicate, counsel goes on to rashly accuse the Commonwealth of deliberately suborning perjury, claiming that the prosecution not only "knew" Gentile would give false testimony, but actively "pressured him" to do so.[14]

14. As the PCRA court noted:

The PCRA court held that appellant's *Brady* petition was untimely; and that, in any event, the claim failed on the merits, for various reasons, including that there was no evidence that Gentile's account was suppressed by the Commonwealth, the evidence was not exculpatory, and the evidence of appellant's guilt was overwhelming.

Resolution of the merits of this appeal need not detain us long, as appellant's argument that his *Brady* petition was timely filed is frivolous. The PCRA provides that "[a]ny petition invoking an exception [to the PCRA's one-year time-bar] shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2); *see, e.g., Commonwealth v. Stokes*, 598 Pa. 574, 959 A.2d 306, 309–10 (2008); *Commonwealth v. Marshall*, 596 Pa. 587, 947 A.2d 714, 720 (2008); *Commonwealth v. Breakiron*, 566 Pa. 323, 781 A.2d 94, 98 (2001). The PCRA court accurately noted that appellant offered no explanation of why, with the exercise of due diligence, the information in Gentile's new account could not have been discovered in the twenty-one years between appellant's trial and when the FCDO eventually decided to send an investigator to talk to Gentile. As the Commonwealth notes, all that appellant, his lawyers, or their investigator had to do was to talk to Gentile.[15] Indeed, Gentile's statement

> There is no contention that Mr. Gentile ever informed any prosecutor about his identification concerns. Rather, he states plainly that he spoke to a "woman who worked in the court" when he attended [appellant's] preliminary hearing. This allegation does nothing to establish the requirement that the Commonwealth "suppressed" the evidence in question, "either willfully or inadvertently," since there is no indication that the Commonwealth was ever aware of any of Mr. Gentile's identification issues....
>
> PCRA Ct. Op. at 12–13.

**15.** Given the delays and the FCDO's posturing detailed In Part I, *supra,* the significance of the timing of the FCDO's decision to interview Gentile is not lost upon this Court. The federal docket reveals that the Third Circuit appeals were twice delayed awaiting decisions from the U.S. Supreme Court in two other cases. On February 1, 2006, over seven months after those delays expired, the Third Circuit finally directed appellant to file his brief within forty days. On March 16, 2006, appellant was granted the first of four sixty-day extensions (the extensions preceded appellant's ultimate motion to hold appellate proceedings in abeyance). During the pendency of the first extension, the

includes an assertion that "if a defense attorney for either the robbery or the homicide would have interviewed me, I would have said that I told the lady at the preliminary hearing that [appellant] was not one of the robbers." According to the terms of this declaration, had counsel or any responsible inquirer interviewed Gentile, the "new" information would have been revealed. The ease with which counsel's investigator secured Gentile's declaration corroborates that it was available upon the exercise of due diligence for a generation; and certainly could have been discovered more than sixty days prior to the filing of appellant's *Brady* petition. The PCRA court's finding of untimeliness is supported by the record, and is without legal error. Hence, we will affirm the order below on time-bar grounds.

## V. THE DELAY ISSUE

The delay in the collateral litigation of this case—both state and federal—has resulted from two causes. The first cause is the pendency of the *Atkins* petition, which we have already addressed. The second cause is the FCDO's litigation strategy in its pursuit of appellant's "new" *Brady* claim since 2006. This strategy is intertwined with—indeed, is the source of— the jurisdictional issue here, and has created state-federal gridlock. In a concurring opinion in *Commonwealth v. Spotz,* 18 A.3d 244 (Pa.2011), joined by Mr. Justice McCaffery, this author discussed the record in this case in the larger context of addressing a concern with the FCDO's accusation in a federal *habeas* pleading in *Commonwealth v. Dougherty,* 18 A.3d 1095 (Pa.2011). The *Dougherty* pleading alleged, among other things, that this Court was the primary cause of delays in Pennsylvania capital cases, indeed that this Court was indifferent to, "and incapable of managing," its capital docket. The *Spotz* concurrence offered examples from capital cases, including many adverted to by the FCDO in its federal motion in *Dougherty,* where the FCDO's conduct was the primary

FCDO investigator interviewed Gentile. During the pendency of the second extension, appellant filed his *Brady* petition, based upon that interview.

cause of delay, a fact the FCDO had inexplicably failed to disclose in *Dougherty*. This case was one of the cases identified by the FCDO in the *Dougherty* motion.

The record summarized in Part I of this Opinion details the strategy of delay employed by Attorney Nolas here. The *Spotz* concurrence described counsel's record argument as follows:

Nolas's argument respecting the PCRA court's power to decide was straight out of "Catch–22." [FN] He argued that the PCRA court: (a) could not dismiss the serial *Brady* claim (a new PCRA claim that led Nolas to secure a federal stay of the *habeas* appeals pending in the Third Circuit) without also ruling on the pending *Atkins* petition; and (b) could not rule on the *Atkins* claim, because the court somehow lacked authority to do so, and Nolas would have to object. So, according to Nolas, the PCRA court could act on neither "claim," and counsel had already succeeded in having the federal *habeas* appeals held **until** the PCRA court acted on the *Brady* claim. Then, Nolas appealed the non-final order [non-final under Nolas's jurisdictional argument here]. This [FCDO] strategy assured a *de facto*, perpetual stay of execution.

[FN]: *See* Joseph Heller, Catch–22 (1961).

18 A.3d at 347 & n. 9 (Castille, C.J., joined by McCaffery, J., concurring) (emphasis in original).

But, this is not the last word on the circumstances relevant to the delay and gridlock created by the FCDO's pursuit of its *Brady* claim in this case. After this Court directed supplemental briefing on the jurisdictional issue, Attorney Nolas filed appellant's supplemental brief, dated November 12, 2010. The Commonwealth, in its own supplemental responsive brief, appended a status report that Attorney Nolas later filed in the Third Circuit on December 6, 2010. That federal status report reads, in relevant part, as follows:

As stated in our prior reports, the Philadelphia County Court of Common Pleas summarily denied relief on Mr. Porter's claim arising from the recantation of witness Vin-

cent Gentile, which includes arguments of constitutional error under *Brady v. Maryland* and its progeny. The Court of Common Pleas retained jurisdiction over our claim for relief under *Atkins v. Virginia* and is awaiting word on the appeal from the Pennsylvania Supreme Court before proceeding further.

We have taken on Mr. Porter's behalf an appeal to the Pennsylvania Supreme Court from the denial of relief on the *Brady* claim, as the Court of Common Pleas indicated. We have filed our brief, the Commonwealth has now filed its responsive brief and we filed our reply brief. The Pennsylvania Supreme Court thereafter ordered supplemental briefing on procedural questions, and we recently filed this supplemental brief. It is our hope that the Pennsylvania Supreme Court will correct what we believe were errors by the Court of Common Pleas and at least remand for an evidentiary hearing on the *Brady* claim. It is also our hope that the Court of Common Pleas will grant relief on the *Atkins* claim.

We respectfully request that the United States Court of Appeals for the Third Circuit continue to keep this case in suspense/abeyance pending the Pennsylvania Supreme Court's resolution of Mr. Porter's *Brady* claim and, if relief is not granted on the *Brady* claim, pending Mr. Porter's *Atkins* claim in the Pennsylvania courts. We believe both claims are substantial. We will keep the Court of Appeals apprised of further developments. Thank you for your attention.

Commonwealth's Supplemental Brief, Exhibit A, 1–2. Attorney Nolas later represented in his supplemental reply brief, filed in this Court on December 23, 2010, that "[e]verything counsel stated in the federal court status report (appended to the Commonwealth's Supplemental brief) is accurate." Appellant's Supplemental Reply Brief at 3.

The Commonwealth argues that the federal status report furthers a "stalemate between the PCRA court and the federal court of appeals [that] has been manufactured by [appellant's] attorney, who for more than six years has filed motions

. and status reports asking the Third Circuit to hold [the federal appeals] in abeyance." The Commonwealth adds that, even after arguing to this Court that this appeal should be quashed for lack of jurisdiction, counsel "continues to assure the Third Circuit that he expects this Court to rule in his favor, and that the Third Circuit should refrain from acting." Commonwealth's Supplemental Brief at 1 & n. 1.

The federal status report is probative of counsel's overall strategy of delay, and is disturbing in two respects. First, the report shows that federal counsel's representations to both the PCRA court and the Third Circuit lacked candor. In the report to the Third Circuit, Attorney Nolas represented that appellant's *Atkins* claim was being held by the PCRA judge pending "word" on the *Brady* appeal to this Court, declared his "hope that the Court of Common Pleas will grant relief on the *Atkins* claim," and then requested that the federal appeals be kept in abeyance, not just for the *Brady* decision, but also "if relief is not granted on the *Brady* claim, pending Mr. Porter's *Atkins* claim in the Pennsylvania courts." But, counsel had taken a very different position before the PCRA court—successfully so, and thereby inducing delay—and the report to the Third Circuit misrepresents the state court proceedings concerning the *Atkins* issue. As reflected in Part I of this Opinion, counsel had represented to the PCRA court that the federal appeals were being held solely to allow for exhaustion of the *Brady* claim; that appellant's *Atkins* claim was being held in state court until **after** the federal appeals were decided; that there was no need to decide the *Atkins* claim before the federal appeals were decided; and indeed, that counsel would **object** if the PCRA court passed upon the *Atkins* claim. Counsel's status report to the Third Circuit failed to disclose the patently contrary argument he had made in state court, or the true status of appellant's *Atkins* claim with respect to both court systems.

Second, the Commonwealth is correct that federal counsel's report to the Third Circuit did not disclose that the "procedural questions" upon which this Court directed supplemental briefing involved jurisdiction. Nor, did Attorney Nolas dis-

close that the supplemental brief he had already filed in this Court argued that he had appealed a non-final order, and that he was now requesting quashal of the appeal without prejudice, and doing so without suggestion of how the case could move forward. Instead, counsel gave the Third Circuit the impression that he was awaiting a merits resolution on appellant's *Brady* claim on appeal, and was hopeful he would succeed. Such representations were designed to secure further delay in the federal court, and apparently have succeeded.

Counsel's representations in the report to the Third Circuit fully corroborate what was apparent from the record below: that Attorney Nolas's litigation strategy created "the federal/state logjam" in this case, *Spotz*, 18 A.3d at 346; and that the strategy was undertaken without any expression of concern for the delay the strategy ensured. To those concerns, the report to the Third Circuit adds the specter of federal counsel misleading both court systems concerning the status of this case, in order to perpetuate a *de facto* stay of execution.

## VI. THE *ATKINS* PETITION

 This Court has no control over the actions of the federal courts; but we do have the power to police our own judicial system against unwarranted delay by officers of the Court. Following our affirmance here, the PCRA court must still pass upon the *Atkins* petition. The court should decide that petition as expeditiously as possible. In doing so, the court should be mindful of the delaying strategy that has already been deployed and that the court, not counsel, controls the scope, timing and pace of the proceedings below. *See Bracey*, 986 A.2d at 137–40. Appellant has had over nine years to marshal his proof on the *Atkins* claim. The court is not obliged to hold a hearing unless an adequate proffer has been made concerning mental retardation, and an issue of material fact is determined to be present. If the conduct of the FCDO unduly delays matters, the court below is authorized to appoint new counsel.

## VII. CONCLUSION

The order of the PCRA court is affirmed. The court is directed to decide the pending *Atkins* petition as expeditiously as possible, mindful of the concerns addressed in this Opinion. Jurisdiction is relinquished.

Justices EAKIN and McCAFFERY join the Opinion.

Justice SAYLOR joins Parts I, II, IV, VI and VII of the Opinion.

Justice ORIE MELVIN joins the Opinion except for Part V.

Justice BAER files a Dissenting Opinion in which Justice TODD joins.

Justice BAER, dissenting.

This Court resolved Appellant's first PCRA petition in 1999. As the Majority observes, on August 16, 2002, Appellant filed his second PCRA petition, in which he challenged his death sentence under *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (holding that it is unconstitutional cruel and unusual punishment to execute a mentally retarded person) (hereinafter the "*Atkins* petition").[1] On June 15, 2006, Appellant presented a third filing to the PCRA court, raising for the first time a claim premised on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (declaring that due process is offended when the prosecution withholds evidence favorable to the accused that would tend to exculpate him or reduce the penalty imposed). The question before the Court is whether the *Brady* claim was an amendment to the pending *Atkins* petition, or a separate and discreet PCRA petition. The Majority finds that the *Brady* claim was brought in a new PCRA petition. I view it as an amendment to the *Atkins* petition. Pursuant to my interpretation, this case involves the straight forward application of the final order doctrine. Because I believe that the order from which Appellant appealed was not a final order by virtue

[1]. This claim was filed within 60 days of the decision in *Atkins* as required by 42 Pa.C.S. § 9545(b)(2).

of its disposition of only the *Brady* petition and not the *Atkins* petition, I would quash the appeal. Thus, I dissent.

As the Majority explains, following our disposition of Appellant's first PCRA petition in 1999, Appellant filed a federal habeas corpus petition in the U.S. District Court for the Eastern District of Pennsylvania. While this federal action was pending, Appellant began new litigation in state court with the filing of his *Atkins* petition. Thereafter, the federal district court granted Appellant sentencing relief premised upon a finding of instructional error, relying upon the Third Circuit's precedent construing *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). The parties filed cross-appeals to the Third Circuit.

Meanwhile, the PCRA court decided to defer consideration of Appellant's *Atkins* petition. Although the record does not demonstrate the precise basis for this action, it appears that Appellant's counsel persuaded the PCRA court to defer consideration until the parties' cross-appeals before the Third Circuit were resolved. Maj. Op. at 515–18, 35 A.3d at 8–9. While the *Atkins* petition was pending with disposition stayed, Appellant filed what he titled a "supplement and amendment" to it raising the *Brady* claim.

Appellant then returned to federal court and persuaded the Third Circuit to defer consideration of the pending cross-appeals from the federal district court's finding of instructional error under *Mills* until the newly filed *Brady* claim was resolved in state court. Consequently, the PCRA court was deferring consideration of the *Atkins* petition pending resolution of the cross-appeals to the Third Circuit, the Third Circuit was deferring the cross-appeals pending resolution of the *Brady* claim in PCRA court.

The PCRA court, in due course, accepted written submissions on the *Brady* claim, heard argument, and found that it was untimely. On September 25, 2007, the PCRA court orally informed Appellant that his *Brady* claim was going to be dismissed without a hearing, and ruled that "[t]he petition is denied." Maj. Op. at 518, 35 A.3d at 9. The parties and the

PCRA court, however, expressed an understanding that an appeal from the denial of the *Brady* claim would not affect the trial court's decision to hold the *Atkins* petition pending disposition of the parties' cross-appeals to the Third Circuit. Consequently, the denial of relief on the *Brady* claim is now presented to us on appeal, while the *Atkins* claim remains unresolved and pending before the PCRA court, and the cross-appeals to the Third Circuit also remain pending.

The Majority raises serial justifications for its belief that Appellant's *Brady* claim was raised in a separate PCRA petition notwithstanding that the *Atkins* petition was pending when the *Brady* claim was filed. First, the Majority reasons that amendments to pending PCRA petitions may only be permitted upon prior direction or leave of the PCRA court. Maj. Op. at 523, 35 A.3d at 12 (citing Pa.R.Crim.P. 905). Because Appellant did not request and receive leave to amend the *Atkins* petition, the Majority does not consider the *Brady* claim to be an amendment. Second, the Majority observes that the PCRA court treated the *Brady* claim as a separate petition, by virtue of its order dismissing "the petition." The Majority proceeds to consider whether the PCRA court had the authority to dismiss the *Brady* "petition" while holding the *Atkins* petition in abeyance, and finds no impediment to such resolution.

I disagree with the Majority's analysis for several reasons. First, with respect to the procedural requirement that a petitioner who wishes to amend a pending PCRA petition must first seek and obtain leave of court, *see* Pa.R.Crim.P. 905, the Majority apparently views an amendment filed without prior approval by the PCRA court necessarily to be a new petition. Notably, the Commonwealth never objected to the filing of the *Brady* claim and there is no indication that the PCRA court focused on this issue. It does not follow that because Appellant did not seek permission to amend, the Commonwealth did not object to this failure, and the trial court did not recognize the procedural irregularity, that the filing is a new petition. Just as the Majority finds it obvious that the filing must be a new petition under these facts, I find it equally obvious that it was an amendment, notwithstanding

that the issue of leave to file escaped the parties' and court's attention.

Moreover, I view the record as supporting this construction. Appellant's *Brady* claim was asserted through an amendment to his pending *Atkins* petition, rather than through the filing of a new petition. Appellant styled this claim as a supplement and amendment to the petition for post-conviction relief, and the on-the-record exchange reproduced in the Majority opinion demonstrates that the parties and the court treated the *Atkins* claim and the *Brady* claim as two issues rather than two petitions. *See* Maj. Op. at 517–20, 35 A.3d at 9–10. When the PCRA court resolved only one of the two claims before it, Appellant indicated in his notice of appeal that he was solely appealing from that order, and indicated in his jurisdictional statement that he was appealing from the order "denying (at least in part)" his PCRA petition. The PCRA court's imprecise reference to its denial of the "petition" either comes from loose language borne from lack of recognition of the issue now before this Court or because of the trial court's understandable uncertainty regarding the treatment of the filings before it. Additionally, the Commonwealth's belated supplemental argument that Appellant's attempt unilaterally to amend his petition should not be permitted rests on the premise that Appellant's *Brady* claim arose through an attempted amendment of the pending PCRA petition.

We have held that one cannot file a new PCRA petition in a trial court while a prior petition is under appellate review. *Commonwealth v. Lark*, 560 Pa. 487, 746 A.2d 585 (2000). This rule arises from this Court's desire to avoid multiple, serial PCRA petitions. *Id.* at 588 ("Appellant could not have filed his second PCRA petition in the court of common pleas while his first PCRA petition was still pending before this court. The trial court had no jurisdiction to adjudicate issues directly related to this case; only this court did."). In my view, the logic of *Lark* is in tension with the majority's holding herein. While it is clear that Petitioner could not have filed his *Brady* petition if the *Atkins* petition had been finally decided and appealed from, the Majority holding means that

so long as the trial court maintains jurisdiction, multiple claims can be presented to it in serial filings, the PCRA court can decide each individually and each can be subject to a separate appeal. While I do not suggest that the Majority envisioned this scenario, I do respectfully suggest that it is consistent with the Majority's holding. I suggest also that it is wholly inconsistent with the *Lark* decision, and the wisdom that guided that pronouncement.

Because I view the *Atkins* and *Brady* issues as two claims in a single PCRA petition, I would conclude that the PCRA court issued an interlocutory order deciding only one of the two claims before it. This Court has exclusive jurisdiction only over final orders arising from capital cases, including those invoking the PCRA. *See* 42 Pa.C.S. § 722(4) (providing that "[t]he Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following classes of cases: ... (4) Automatic review of sentences as provided by 42 Pa.C.S. §§ 9546(d) (relating to relief and order) and 9711(h) (relating to review of death sentence)."); 42 Pa.C.S. § 9546(d) ("A final court order under this subchapter in a case in which the death penalty has been imposed shall be directly appealable only to the Supreme Court pursuant to its rules."); 42 Pa.C.S. § 9711(h) ("A sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania pursuant to its rules."); *Commonwealth v. Breakiron*, 566 Pa. 323, 781 A.2d 94, 95 n. 1 (2001) ("Our Court has exclusive jurisdiction of appeals from final orders denying post-conviction relief in capital cases."). Consequently, I believe we can only review the PCRA court's dismissal of Appellant's *Brady* claim if the PCRA court issued a final order.

A final order is one that finally disposes of a PCRA petition. Pa.R.Crim.P. 910 ("An order granting, denying, dismissing, or otherwise finally disposing of a petition for post-conviction collateral relief shall constitute a final order for purposes of appeal."); *Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547, 550 (1999) ("A final order is ordinarily one which ends the litigation or disposes of the entire case...."); *see also Common-*

*wealth v. Dowling*, 584 Pa. 396, 883 A.2d 570, 575 (2005) (where the PCRA court did not clearly dispose of the appellant's PCRA petition, we directed the court to enter a final order disposing of the petition to enable the appellant to appeal). Here, because the PCRA court only disposed of one of two pending claims before it, it did not issue a final order and, in my opinion, this Court lacks jurisdiction over the appeal.

Although I applaud the Majority's desire for the prompt resolution of all PCRA claims, I favor such resolution in a final order, rather than the multiple orders the Majority necessarily embraces. Having a final order disposing of all claims and one appeal therefrom avoids the potential for piecemeal litigation, whereas permitting multiple PCRA petitions to be filed, considered, and appealed independently will likely breed mischief and encourage the sort of gamesmanship that occurred here.[2]

For example, it could permit a petitioner to file multiple untimely PCRA petitions raising unrelated claims and obtain review of each one independently, leading to multiple final orders, possibly inconsistent holdings, separate appeals, and a substantial burden on the orderly administration of justice. *See Rae v. Pennsylvania Funeral Directors Ass'n*, 602 Pa. 65, 977 A.2d 1121 (2009) (explaining that the consolidation of all contested rulings into a single appeal provides appellate courts with an opportunity to consider a trial court's actions in light

---

2. I share the Court's concern for the gridlock created by federal counsel in this case. By persuading the PCRA court to defer consideration of the *Atkins* claim until the parties' cross-appeals in the Third Circuit were resolved, and then persuading the Third Circuit to stay resolution of the cross-appeals pending the PCRA court's resolution of the *Brady* claim, it appears that counsel was able to delay final resolution of these capital proceedings indefinitely. Obviously, all courts, state and federal, should guard against such manipulation. I believe counsel's conduct in this case should be scrutinized to see if it has crossed a line from zealous advocacy to inappropriate manipulations of the court system. Notwithstanding my support for such review, I believe that this Court should adhere to its well-established final order doctrine, and require the PCRA court to address the pending *Atkins* claims before appellate review. Indeed, I believe such course will in the end prove not only qualitatively superior but more expeditious.

of the entire proceedings below, thereby enhancing the likelihood of sound appellate review); *Pennsylvania Bankers Ass'n v. Pennsylvania Dept. of Banking,* 597 Pa. 1, 948 A.2d 790 (2008) (collecting cases to document this Court's efforts to avoid piecemeal litigation); *Pentlong Corp. v. GLS Capital, Inc.,* 573 Pa. 34, 820 A.2d 1240 (2003) (warning that piecemeal litigation is inefficient and likely to yield inconsistent results); *Stevenson v. General Motors Corp.,* 513 Pa. 411, 521 A.2d 413, 416 (1987) (explaining that discouraging interlocutory appeals avoids "piecemeal determinations and the consequent protraction of litigation") (quoting *Sullivan v. Philadelphia,* 378 Pa. 648, 107 A.2d 854, 855 (1954)). Accordingly, I would quash the appeal.[3]

Justice TODD joins this dissenting opinion.

Chief Justice CASTILLE, in support of denial of appellant's motion for recusal.

This capital appeal is from the denial of appellant's serial petition for relief under the Post Conviction Relief Act ("PCRA").[1] Following submission on the briefs and supplemental briefing addressing jurisdiction, at the direction of the Court, appellant Ernest Porter, through his counsel, Billy H. Nolas of the Philadelphia-based Federal Community Defender's Office ("FCDO"), has filed a 19–page Motion for my recusal from the appeal, along with a request to refer the Motion to the full Court.[2] For the reasons set forth below, I will deny the Motion and the referral request.

3. I agree with the Majority that when a PCRA court inadvertently fails to address all claims raised in a petition, this Court may consider the issue if we can do so without the PCRA court's fact-finding. *See* Maj. Op. at 528, 35 A.3d at 15. Unlike those instances where a PCRA court has overlooked a claim, the court here intentionally chose not to address one of two major constitutional claims pending before it. Under these circumstances, I would remand to permit the PCRA court in the first instance to deal with the *Atkins* claim, and then review all aspects of this PCRA petition.

1. 42 Pa.C.S. §§ 9541–9546.

2. Neither the Chief Defender of the FCDO nor any other attorney from that organization is listed on the Motion filed by Attorney Nolas.

The relevant procedural history, including the record concerning the delay in this case, is set forth in the Court's Opinion, filed contemporaneously with this Recusal Opinion. The recusal request is primarily based upon my Concurring Opinion in *Commonwealth v. Spotz*, 18 A.3d 244 (Pa.2011), which was joined by Mr. Justice McCaffery. Attorney Nolas alleges that my discussion of the *Porter* record in the *Spotz* concurrence requires my recusal because I supposedly "expressly articulated an opinion about the merits" of Porter's appeal and "accused counsel of misconduct" in this case. Nolas does not seek the recusal of Justice McCaffery. The Commonwealth responds by noting that the recusal motion corroborates the administrative and institutional concerns addressed in my *Spotz* concurrence. Thus, the Commonwealth argues that each of the grounds for recusal lacks even a colorable basis, and that the Motion, which is significantly longer than appellant's principal brief, further confirms the FCDO's global strategy of delaying capital cases by forcing prosecutors and the Court to respond to "an endless series of frivolous claims."

Attorney Nolas first states that my recusal is required because my discussion of the *Porter* record in my *Spotz* concurrence included an "express prejudgment" of the merits of this appeal. Specifically, Nolas says that my concurrence stated my "belief" or "conclusion" that appellant's serial *Brady*[3] claim, the denial of which is the subject of Porter's appeal, was time-barred under the PCRA. Nolas's actual argument on this point is brief. Citing Canon 3A(6) of the Pennsylvania Code of Judicial Conduct and non-binding decisions from various federal Circuit Courts, Nolas argues that my recusal is required because I made a public comment expressing my opinion on the merits of a pending appeal. Motion, ¶ 40.

The Commonwealth responds that counsel's reliance on Canon 3A(6) is frivolous, since the Canon only discourages public comments concerning pending cases made outside a judge's official duties, such as comments to the media; the Canon does not address "public comments" in the guise of

---

**3.** *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

formal judicial opinions.[4] Respecting Attorney Nolas's accusation of "prejudgment," the Commonwealth notes that the concurrence in *Spotz* was issued long after this case had already been submitted to the Court for decision—indeed, the *Spotz* concurrence was filed after this Court had directed further briefing in this appeal, a directive that obviously resulted from consideration and deliberation. Thus, the Commonwealth submits, any commentary by the *Spotz* concurrence concerning the record in this case, whether involving the merits or not, reflects judging, not pre-judging.

This recusal argument indeed is frivolous, and distressingly so. Even though the Commonwealth's points are well-taken,[5] the argument is frivolous for a more fundamental reason: Attorney Nolas blatantly misrepresents my concurrence in *Spotz*. Nolas declares, as if the assertion were self-proving, that I "expressly articulated an opinion about the merits of the appeal," further declaring that my "comments on Appellant's pending appeal were not directed toward peripheral matters, but went to central issues before the Court. Chief Justice Castille stated his belief that Appellant has asserted a 'time-barred *Brady* claim.'" Motion, 2 ¶ 6; 10 ¶ 39.

This is simply false. My concurrence in *Spotz* addressed the delay that Attorney Nolas has orchestrated in this state capital case, which is plainly demonstrated by the transcript (and has been corroborated by the pleadings on this Motion). I offered no view on the merits of this appeal, much less did I "expressly prejudge" those merits.

Nolas's argument to the contrary is revealingly non-contextual. My concurrence in *Spotz* quoted at length from the

4. The Canon reads as follows:

Judges should abstain from public comment about a pending proceeding in any court, and should require similar abstention on the part of court personnel subject to their direction and control. This subsection does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court.

5. Nolas's public comment theory is untenable; indeed, under his strained interpretation, even a judge's comment at oral argument reflecting skepticism, or sympathy, on the merits would require recusal.

transcript of the PCRA hearing at which the trial court decided appellant Porter's *Brady* petition. I prefaced the quotation from the *Porter* transcript in *Spotz* by noting that the exchange occurred after the PCRA court had already announced its intention to dismiss the *Brady* petition. The portion of the *Porter* transcript I quoted then set forth the PCRA court's of-record ruling that the petition in this case was denied "on the grounds that it is not timely and does not meet the requirements for *Brady* material." Later in the quotation, after the PCRA court noted the next step in implementing its time-bar decision—issuing a dismissal notice under Pa.R.Crim.P. 907—Nolas said he would object, and the court asked Nolas what he would suggest the court do instead. Nolas responded that he should be permitted to depose the *Brady* witness. At that point in the *Spotz* concurrence's quotation from the transcript in *Porter,* I inserted the following clarifying notation in brackets: "i.e., drag out the disposition of the time-barred *Brady* claim."

Remarkably, Attorney Nolas's recusal argument does not acknowledge this context. The bracketed reference in the *Spotz* concurrence to "the time-barred *Brady* claim," which appeared in a block quotation from the transcript in this case, was an explanatory factual reference to the status of the *Brady* claim, as already determined by the PCRA court and reflected in the very same quoted material. The bracketed reference also noted the effect of Nolas's argument, faced with a time-bar ruling; the argument, if accepted, would have caused further delay in a case, already delayed for years, to pursue a claim deemed time-barred. Notably, Nolas's request to depose the witness was not an answer or challenge to the court's time-bar ruling; it was, instead, a request that would induce delay despite the petition being deemed time-barred. My bracketed comment accurately characterized the excerpt I quoted.

Moreover, my discussion of the *Porter* transcript in *Spotz* did not remotely examine the "central" *Brady* merits issue, as counsel falsely claims. Rather, the discussion was exclusively in connection with my concern about FCDO-induced delay in

Pennsylvania capital cases generally. My concurrence in *Spotz* noted that the FCDO's strategy of delay in cases such as *Spotz* and *Porter* was made relevant by the FCDO's global federal motion in yet another then-pending capital case, *Commonwealth v. Dougherty*, 585 CAP. That federal motion attacked this Court's handling of its entire capital docket, including this case, blamed the delays on this Court, and claimed that this Court was indifferent to, and incompetent to manage, its capital docket. (Notably, there has been no averment that the FCDO has corrected the scurrilous accusations in its federal motion in *Dougherty* or withdrawn that motion.) My final point about this case in *Spotz* was to accurately note that not once did Nolas "forward the [FCDO's] new-found concern with delay while ensuring delay in both judicial systems in *Porter*." 18 A.3d at 348.

I did not "pre-judge" the *Brady* merits of this case in *Spotz* by discussing the delay that Attorney Nolas has indisputably engineered here.[6] My comments in *Spotz* had nothing to do

6. The delay in this case that I described in *Spotz*—the federal/state logjam resulting once Nolas both secured a federal stay and abeyance on Porter's *habeas* appeal (over the objection of the Commonwealth) and then argued to the PCRA court that it could not decide either Porter's *Atkins* petition or his new *Brady* claim—was chargeable solely to the FCDO's arguments and strategy. Nolas tries to charge the delay to the Commonwealth, noting a non-record suggestion by the Commonwealth that the PCRA court set aside the *Atkins* petition, before Nolas filed his *Brady* petition. The issue of responsibility for the delay occasioned by counsel's machinations respecting the *Brady* claim is apparent on the face of the PCRA record here and is addressed in my Opinion for the Court. In addition, the Commonwealth's response to the instant Recusal Motion addresses the point adequately:

Defense counsel also makes an argument ... that the Commonwealth *agreed* to his strategy of delay in this case, which involved telling the PCRA court that it could not act on the *Atkins* claim until the federal proceedings were complete while telling the federal court it could not act at all until the PCRA proceedings were finished. This is a gross mischaracterization. It is certainly true that the Commonwealth was willing to defer defendant's *Atkins* claim until the time of re-sentencing (in the event the federal district court's order vacating the sentence of death is affirmed by the Third Circuit) if the PCRA court found such a procedure more efficient. Indeed, as defense counsel admits, Chief Justice Castille specifically quoted the Commonwealth's position to that effect in his opinion. But the Commonwealth has never supported either [appellant's] position that the

with Ernest Porter's cause; they had to do with the conduct of the FCDO in general, and of Nolas in particular, in causing the delay in this case. Moreover, it is beyond remarkable that Nolas forwards this recusal argument without acknowledging the FCDO's motion and accusations in *Dougherty*, the point actually being made in my *Spotz* concurrence, and the context of my bracketed factual explanation in that responsive opinion. Because Nolas's recusal argument in this case is premised upon an abject mischaracterization of my concurrence in *Spotz*, it is yet another example of the FCDO's determination to tie up Pennsylvania courts with frivolous pleadings.

Next, Attorney Nolas asserts that my recusal is required because my comments concerning his record actions in this and other cases express "animosity" toward him personally. Nolas also complains that he was not given an opportunity to be heard before I noted what the record plainly disclosed about his role in creating the delay in this case. Finally, Nolas argues that my remarks in *Spotz* concerning his role in causing the delay here were "unfounded."

The Commonwealth responds that there is nothing improper in a Justice of this Court describing the record of abusive tactics of the FCDO in Pennsylvania capital cases. Furthermore, the Commonwealth notes that if a strong condemnation of such abuses were enough to warrant recusal, then virtually the entire Court would have to recuse in FCDO cases, since a number of the FCDO's claims in *Spotz* were condemned by the Court's Opinion as frivolous, or even "frivolous in the extreme." The Commonwealth also stresses this Court's institutional role, both as the Court of last resort in Pennsylvania and the ultimate arbiter of attorney discipline. Given that

> PCRA court *lacked authority* to rule on his *Atkins* claim, or his paradoxical argument that the Third Circuit cannot decide the federal habeas appeal until he receives a ruling on the *Atkins* claim in state court—a ruling that, under his theory, can never occur. And it is those inherently contradictory positions for which defense counsel has successfully advocated, not the Commonwealth's attempts at modest accommodation, that caused the enormous delay in this case. Commonwealth's Answer, 10–11, ¶ 5. It is clear that all unnecessary delay in this case since Nolas raised the *Brady* claim is chargeable to Nolas's litigation strategy.

role, the Commonwealth emphasizes that this Court can, and must, police attorney conduct and when its constituent Justices act in fulfillment of that duty, their actions cannot reasonably be construed as bearing "personal animosity" toward the attorney involved; instead, the Court is merely fulfilling its constitutional mandate. No reasonable observer, the Commonwealth argues, would believe that the Justices of this Court should be deemed incapable of fairly adjudicating cases involving lawyers whose record misconduct those Justices may have noted and even condemned.

Furthermore, there is no support in the law for the ludicrous assertion that an attorney be given an "opportunity to be heard" before a court may notice and comment in a published opinion as to what a case record plainly discloses about that attorney's relevant conduct. Of course, such a requirement would surely cause further delay in capital cases; but the Due Process Clause is not a Due Delay Clause. Moreover, the FCDO's own actions indicate that it does not subscribe to this novel theory posed by Nolas. My discussion in *Spotz* of examples of FCDO-induced delay in capital cases was occasioned in part by the motion filed in federal court by the FCDO in *Dougherty*, which attacked the competence of this Court to manage its capital docket, while failing to acknowledge the FCDO's central role in causing delay in many of the cases they cited. Notably, the FCDO did not present its scurrilous accusation in *Dougherty* here first, or even bother to serve this Court with a copy of the accusation, before lodging its attack in federal court.

In any event, I have considered Attorney Nolas's Motion here as airing his grievance that ascribing any delay in *Porter* to his conduct is "unfounded." The record plainly and unambiguously reveals otherwise. Furthermore, Nolas's objections do not speak well of the organization of which he is a central part, beginning, as the motion does, with a factual mischaracterization. My Opinion for the Court in this case addresses the record in detail, as well as non-record material appended to this recusal motion that bears upon the delay question. That discussion encompasses all of the relevant circumstances

that form the basis for Nolas's current complaint, including his assertion that the Commonwealth initially requested that appellant Porter's *Atkins* claim be held; Nolas's misrepresentation of the holding and import of *Rhines v. Weber,* 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), in declaring that the Third Circuit's "stay and abeyance" of the federal cross-appeals represented a favorable expression of view on the merits of appellant's *Brady* claim; the content and significance of the FCDO's less than candid status report to the Third Circuit in this case; and the content and significance of the record argument Nolas made to the PCRA court below. My comments, here and in *Spotz,* are record-based and accurate. Contrary to the FCDO's complaint in *Dougherty* about delay and incompetence on the part of this Court, Attorney Nolas, on behalf of the FCDO, undertook a course of conduct in this case that ensured substantial delay in both state and federal court, without ever uttering a syllable of either admission or complaint concerning that consequence. That is a record fact. No further response will be made here; Nolas and the FCDO have wasted enough of this Court's time with their frivolous posturings.

Turning to Attorney Nolas's argument respecting my supposed "personal animosity" toward him, this complaint reprises an argument Nolas has made before. This time, the argument is cluttered with superficial citations to obviously inapposite authority, including concurring opinions, and non-binding opinions involving trial judges. Motion, 10–11, ¶ 41. What Nolas does not bother to include is a citation to the authority I cited, and the reasoning I provided, in rejecting an identical argument he made in *Commonwealth v. Beasley,* 594 Pa. 458, 937 A.2d 379 (2007) (Recusal Opinion of Castille, J.). That Opinion more than answers this claim; it would be a further waste of time chasing down Nolas's contemptuous invocation of inapposite authority.

Finally, Attorney Nolas further burdens the Court by including a near stream-of-consciousness argument citing "additional considerations" that, he says, "support the need" for my recusal. The first point reprises the FCDO's repetitious

complaint that my former position as the elected District Attorney of Philadelphia County requires my recusal, even though I had no actual involvement in appellant Porter's trial or direct appeal. This claim is waived, since Nolas failed to seek my recusal on this ground prior to submission of this appeal and the commitment of resources to it. In any event, I have addressed the argument in multiple prior opinions. *See, e.g., Beasley, supra.*

The second part of Attorney Nolas's argument in this regard adverts to my election campaign in 1993, and hearsay reported in media accounts of that election. Motion, 14–17, ¶¶ 55–57. Any recusal argument premised upon this material was easily available to Nolas before this appeal was submitted; the argument, thus, is waived. In any event, this complaint is unaccompanied by anything resembling a legal argument, and I am not obliged to disentangle the net in search of one, although I would refer Nolas to the High Court's opinion in *Republican Party of Minnesota v. White,* 536 U.S. 765, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002). Suffice it to say, the Commonwealth is correct that Nolas's contortions serve only to corroborate my observations of the FCDO's global strategy of delay.

Third, Attorney Nolas says that my recusal opinions in *Beasley, supra,* and in *Commonwealth v. Rainey,* 590 Pa. 256, 912 A.2d 755 (2006) (Recusal Opinion of Castille, J.) betray an "antipathy" toward him which somehow requires my recusal. I addressed the FCDO's perverse worldview in this regard, at length, in *Beasley.* If the FCDO truly feels aggrieved, and remains disinclined to require Nolas to conform to his professional ethical obligations in Pennsylvania courts, the simple answer is to reassign Nolas to the federal court system, where the FCDO is actually authorized by Congress to practice.

Turning to Attorney Nolas's request that I refer this Motion to the full Court, the request is supported by no authority or argument. Even if there were some basis for the request, I would not burden the Court with this sort of pleading.

560

Based upon the foregoing considerations, I find that the motion requesting my recusal should be, and it hereby is, denied, per the attached order.